Joyce ROBERTSON, et al. individually and on behalf of all others similarly situated, Plaintiffs,

v.

Larry D. JACKSON, in his official capacity as Commissioner of the Virginia Department of Social Services, Defendant.

Civ. A. No. 3:91CV00197.

United States District Court, E.D. Virginia, Richmond Division.

June 5, 1991.

Meryl Collé Maneker, Virginia Poverty Law Center, Richmond, Va., Brenda J. Gilliam, John Joseph Wall, Legal Services of Northern Virginia, Manassas, Va., Anne Bright Holton, Central Virginia Legal Aid Soc., Richmond, Va., Robert J. Golcheski, Virginia Legal Aid Soc., Lynchburg, Va., for plaintiffs.

Diane Billings Beck, Barbara Jean Gaden, Thomas J. Czelusta, Office of Atty. Gen., Mary Sue Terry, Atty. Gen. of Va., Richmond, Va., for defendant.

### MEMORANDUM

MERHIGE, District Judge.

The matter before the Court is one in which the named plaintiffs seek to remedy violations of federal law on behalf of a class of all Virginia residents eligible to receive food stamps, including those individuals who have applied for, attempted to apply for, or otherwise have requested food assistance, or in the future will request such assistance. The class does not include those persons whose applications or requests were made more than two years prior to May 6, 1991. With this action plaintiffs seek declaratory and injunctive relief against the defendant Larry D. Jackson, the Commissioner of the Virginia Department of Social Services ("VDSS"), who is sued in his official capacity. Jurisdiction is attained by virtue of 28 U.S.C. § 1343(a)(3), this being an action brought pursuant to 42 U.S.C. § 1983; 28 U.S.C. § 1331; 28 U.S.C. §§ 2201 and 2202. Much of the evidence before the Court has been stipulated, and with the cooperation of counsel, issues have been heard in an expedited manner.

### Findings of Fact and Conclusions of Law

This case concerns the timely operation of the federal Food Stamp Program in Virginia. Congress instituted the Food Stamp Program ("the Program") operated by Virginia and each of its sister states upon a finding that "the limited food purchasing power of low-income households contributes to the hunger and malnutrition among members of such households." 7 U.S.C. § 2011. There has been no denial of the fact that the need for the program in Virginia is desperate and that its efficient functioning is vital to the well-being of many Virginians. In this regard, the value of the timely operation of the Program cannot be overestimated.

The Food Stamp Program is one in which the states are not required to participate. Nevertheless, if they do choose to participate, they do so under an agreement to operate the Program within their state in accordance with applicable federal laws and regulations and in accordance with their own state's Food Stamp Plan. 7 C.F.R. § 272.2(b). The USDA, through its Food and Nutrition Service, promulgates the regulations governing the Food Stamp Program nationwide and has oversight responsibility over the various state agencies responsible for administering the Program.

Virginia, of course, has chosen to participate.

The Court finds that under the Program eligible households are supplied with coupons to purchase food at grocery stores approved by the United States Department of Agriculture ("USDA"). 7 U.S.C. § 2016. The USDA bears the cost of these benefits and pays at least 50 percent of the administrative costs of the Program. 7 U.S.C. § 2025(a). In Virginia, as in every state, the Program is administered by a "state agency." Virginia law splits operational responsibilities between the state government and local governments. The VDSS is the agency responsible for the overall administration of the Program, while the local Boards of Social Services of the several counties and cities in Virginia have responsibility for the certification of households and the issuance of coupons. Va.Code § 63.1–87, *et seq.* The local boards thus handle the day-to-day administration of the Program in each county or city.

Admittedly, the defendant Commissioner has no appointment or unlimited removal authority over the local boards and may remove a local director or other employee only if that person does not meet the personnel standards set by the State Board of Social Services. The members of these boards are appointed by local governing bodies pursuant to Va.Code §§ 63.1–40 and 63.1–43. These local boards set the compensation for the local director and other employees within the compensation plan adopted by the State Board. *See* Va.Code § 63.1–66.

Virginia has 124 local social service agencies that accept and process all food stamp applications. In so doing, they act as agents for the defendant in matters relating to the Program within their jurisdictions. Va.Code § 63.1–67.3, et seq. Among the administrative obligations of the VDSS is the monitoring of the performance of these local agencies in order to assure that they comply with all applicable law. The VDSS also is obligated to correct any deficiencies which may arise from the local agencies' performance. 7 C.F.R. §§ 275.5, 275.16, et seq. In short, the VDSS is responsible for ensuring that any corrective action planned as adequate to remedy problems is implemented and that local agencies' compliance is monitored. *See* 7 C.F.R. §§ 275.18, 275.19(b).

As the Court has pointed out, although the Commissioner has no appointment and limited removal authority over local boards, Virginia law empowers the State Board of Social Services to oversee local functions and mandates the local authorities to perform the duties imposed upon them by law. Additionally, the Board may authorize the Commissioner to provide for the benefits and recover the costs and other funds distributed by the Commonwealth of Virginia to any particular locality in default. § 63.1–123. The Board also may authorize the Commissioner to withhold all or a part of the administrative reimbursement from a local agency.

While the 50 percent federal share of the administrative costs is paid to the Commonwealth of Virginia, part of which is passed on to the local agencies as part of the state's allocation to the localities for eligibility administration of all benefit programs (including the Food Stamp Program), the state is responsible only for a portion of the remaining 50 percent of administrative costs. Evidence before the Court reflects that the state has paid approximately 30 percent of the administrative costs of the benefit programs, and the local jurisdictions have paid the remaining 20 percent. In some instances, there has been a short fall in administrative funds provided by the state, and certain jurisdictions have provided additional funds to compensate for the same.

The evidence further discloses that the eligibility of an individual who applies for food stamps through the local office of the Social Service Agency is premised on an assessment—pursuant to federal regulations—of an applicant's household's needs, taking into account the number of people in the household, and the income, resources and specified expenses of the household. Generally, once an application is filed, the applicant must ordinarily be interviewed and must provide verification of a wide

variety of eligibility criteria, including, but not limited to, residence, social security numbers of all household members, income and resources of all household members, expenses, disability status, etc. The VDSS generally is responsible for ensuring that the household's eligibility is determined within 30 days from the date of application and that eligible households are provided with stamps or otherwise given an opportunity to participate in the Program within the 30–day period excepting specified client-caused delays. 7 U.S.C. § 2020(e)(3); 7 C.F.R. § 273.2(g), § 274.2(b)(1).

The law also mandates that having been determined eligible for benefits, the household shall receive such benefits retroactive to the date of application. There is no doubt but that Congress's establishment of the 30–day food stamp processing deadlines aimed to ensure that applicants receive the help to which they are entitled in a timely manner. The Court finds, as detailed below, that these deadlines and guidelines have been regularly missed and grossly ignored in Virginia.

Congress also has provided for expedited treatment of applications for certain food stamp applicants who have an immediate need of aid or are absent any access to resources to meet their food needs. Under 7 U.S.C. § 2020(e), this expedited procedure is available to those applicants who are homeless, who have less than $150 income and $100 in liquid resources, whose monthly rent and utilities exceed their income, or who are destitute migrant or seasonal farm workers. Such applicants are entitled to receive their stamps in lieu of a document authorized by some local agency designated "authorization to participate" or "ATP." In those instances, an ATP card is issued in lieu of the stamps themselves.

Expedited applicants are entitled to receive their stamps or ATP card no later than the fifth calendar day following application. As with the general 30–day deadline, the VDSS is responsible for ensuring that this deadline too is met. A determination as to whether an applicant is entitled to expedited processing is the responsibility of the VDSS, which is required to ensure that all applications are screened on the same day they are received in the local offices to determine whether the applicant is entitled to expedited processing.

The evidence before the Court indicates that typically it is estimated that as many as 50 percent of all food stamp applicants are entitled to expedited processing. For these applicants, the urgent circumstances permit postponement of verification of most eligibility requirements until after the first issuance of stamps. The regulations also require in those cases where an agency wishes to mail benefits to an expedited applicant that the stamps are received no later than the fifth calendar day following the application.

■ The evidence before the Court (most of it in the form of depositions) satisfies the Court by a preponderance of the evidence that in Virginia there have been wide spread and serious violations of all timely processing standards of applicants. The evidence reflects that violations have been egregious for both general and expedited processing. For example, in the first three months of 1991, the figures reflect that less than 80 percent of the regular applications were processed timely. Indeed, in many localities the percentages were much lower, although certain of the agencies, particularly in the Roanoke Valley area, appear to be in or near compliance with the 30–day processing standard. On the other hand, however, for the calendar quarter ending March 31, 1991, Fairfax County processed less than 50 percent of all applications in time for the applicants to receive their benefits within the required 30 days.

Defendant puts faith on the state's monitoring system, which roughly shows the number of cases pending more than 30 days on the last day of the month due to agency delay. The evidence utilizing this system, however, indicates that for the Northern Virginia Region, no more than 60.8 percent of applications were processed timely during the quarter ending March 31, 1991. In the Richmond Region for the same period, no more than 80.6 percent were processed on time, and in the Norfolk Region, no more than 74.5 percent were

processed on time, while in Lynchburg, less than 69 percent of applications were timely processed according to the E & E Report for the same period.

More specifically, affidavits and other evidence indicate that the initial named plaintiff's application had been pending more than 30 days at the time of the filing of this suit. It was 42 days after Ms. Robertson's application before she received food stamps and even that was as a result of a special temporary arrangement that the defendant offered in lieu of a temporary restraining order to be entered by this Court. Ms. Robertson had been informed two weeks subsequent to her filing, in fact, that it would be 45–60 days before her application would be processed. Evidence reflects that other class members have had to wait as long as, and in excess of, 60 days after their initial request for any assistance. Regardless of the cause, this is an intolerable, heartless and blatant disregard of the law.

Coupled with the lack of timely processing of applications is the shameful widespread and serious violations in processing expedited applications. The Board frankly is at a loss to specify these deficiencies. There is little if any statistical tracking of whether expedited applications are processed as required. VDSS, however, acknowledges that at least some localities under its supervision are significantly deficient in processing expedited applications on time. People who are in positions to know or should know simply don't know how many individuals receive expedited food stamps on time.

In addition, the Court cannot help but be shocked to conclude that at least one local agency tells applicants who telephone it that no applications will be taken on a particular day. Indeed, even as to that local agency, applicants are informed that they may commence a queue outside the office between 7:00 a.m. and 7:30 a.m. and that people will be accepted on a first-come, first-serve basis. Under those such regimentations, Virginia cannot maintain, as required by law, an effective and efficient Food Stamp Program. To fail to permit persons who first request assistance on a particular day to file applications on that day and to fail to encourage persons who first request assistance any week day from filing applications when they first request assistance is a direct violation of the law and, in the Court's view, a dereliction of responsibility.

An appointment system or quota system of applications may not, and indeed is not a per se violation of the access regulations. However, informing a person who seeks food stamp assistance that he or she must wait until a later day for an interview due to a lack of appointment slots on that day without informing that person he or she should not wait until the time of the contemplated interview to file an application, but should file it the same day is such a violation. In the evidence before the Court, at least one agency has effectively discouraged people from making applications on that same day, and, at the very least, has not encouraged him or her to do so as the law requires.

While the Court has been advised, and the evidence indicates, that the Commissioner has "embarked on a plan" to remedy the inadequacies in the timely processing of food stamp applications, the fact of the matter is, the evidence satisfies the Court that many of the requirements—beyond the timely assessments of applications—of federal law have been either literally overlooked or given short shrift. For example, a regulation gives households the right to file a food stamp application on the same day they contact the food stamp office during office hours; yet, many applicants, upon contacting a food stamp office, have been given an appointment to return another time to actually file the application.

Despite the defendant's having embarked on a remedial plan, he has known of the seriousness of the situation since at least December, 1989. Indeed, the Virginia Legal Social Services Executives, an organization of local agency executives, made a presentation to him and the State Board of Social Services in February of 1990, more than a year before the instant suit was filed entitled "Crisis in Benefit Programs: Request for Action." During that presen-

tation, it was pointed out that the increased application rates for all benefit programs, including food stamps, resulted in increased processing delays and delays in accepting applications. In short, the complaint was that "during the past year and for the immediate foreseeable future, we are in an environment where overload has been constant."

Admittedly, increases in processing delays over the past several years appear to be due at least in part to a steady and dramatic rise in the number of applications received for food stamps and other benefit programs, resulting in steady increases in the volume of the ongoing client caseload. There is no doubt in the Court's mind that increases in applications and ongoing caseload have resulted in the need for significantly more staff to administer the Virginia Food Stamp and other benefit programs.[1]

To date, it would appear that VDSS's authorization of and funding for staff positions for the administration of benefit programs has simply not kept pace with the increasing need. The evidence reflects that direct benefit workers as well as supervisory staff positions have been and are significantly understaffed. The situation seems to have worsened by reason of the fact that VDSS reduced the local agency budget allocations at least twice during the current fiscal year. It would appear to the Court that the Commonwealth presently has a deficiency in excess of 600 positions of what its own standards indicate is necessary to assure timely delivery of food stamps in Virginia.

The Commissioner's so-called plan is one that seems to have been discussed at least more than one year ago. The Court can appreciate the need for discussion and input to generate performance that complies with the law of the United States and with the mandates of humane conduct. Still, discussions for a period of more than a year without significant tangible alleviation of the problem requires the Court's intervention. The defendant assures the Court that the Virginia Food Stamp Program will come into compliance in the near future without strict monitoring on the part of both defendant and the Court. The Departments' anticipation of a steady decline in applications (other than the regular seasonal cycle) is, in the Court's view, overly optimistic and, at the very best, still speculative. A mere hope that there will be improvement in the staffing side of the equation in the near future is not satisfactory proof to the Court that any appreciable improvement under the present plan will occur, absent the Court's reluctant intervention, particularly in light of the magnitude of change necessary to bring Virginia's Food Stamp Program into compliance. While it has been suggested that additional resources will be made voluntarily, it would appear that the only significant additional resources hoped for are allocations from the 1992 General Assembly, and, even if allocated, these funds would not be available for more than one year.

The Court does find that in recent months VDSS has made efforts to utilize more of its existing staff for the purpose of processing food stamps and other benefit program applications. While such may be helpful, its lasting benefit, in the Court's view, is doubtful. The defendant's sole effort has been to convince the Court that he hopes his agency will achieve what he describes as substantial compliance by the end of the year. Frankly, this simply is not encouraging. Indeed, the Court is far from convinced that the defendant has satisfactorily demonstrated that the steps which have already been taken will bring the Virginia Food Stamp Program up to even the limited compliance objectives that the VDSS has set.

Thousands of class members are currently deprived of the help they need and are entitled to under the law in their effort to feed themselves and their families. Even with the VDSS's goals and plans in mind,

---

1. Even this conclusion is suspect, however, in light of what appears at least in some agencies to be a lackadaisical attitude as evidenced by the fact that in at least one instance, an appli-cant who presented himself 15 minutes prior to closing time was told he would have to come back since there wasn't sufficient time before closing to complete an application.

the Court does not foresee voluntary compliance in the near future. The Court thus concludes and declares that VDSS through its actions and inactions has violated plaintiffs' rights to timely processing of regular and expedited food stamp applications. The Court additionally concludes and declares that VDSS through its actions and inactions has violated plaintiffs' rights to compliance with the program access requirements of federal law and regulations. The defendant Jackson, as Commissioner of VDSS, is fully responsible for insuring Virginia's compliance with the Federal Food Stamp Act and implementing regulations.

The Court further concludes that injunctive relief is appropriate and will enjoin the defendant in his official capacity from failing to bring the Virginia Food Stamp Program forthwith into compliance with the Food Stamp Act. *See Haskins v. Stanton,* 621 F.Supp. 622 (D.Ind.1985), *aff'd,* 794 F.2d 1273 (7th Cir.1986); *Harley v. Lyng,* 653 F.Supp. 266 (E.D.Pa.1986); *Hess v. Hughes,* 500 F.Supp. 1054 (D.Md.1980); *see also Alexander v. Hill,* 549 F.Supp. 1355 (W.D.N.C.1982), *aff'd,* 707 F.2d 780 (4th Cir.1983).

■ Lack of resources and lack of bad faith on the part of the agency officials is no excuse for failing to provide the plaintiffs their statutory entitlements. *See Harley,* 653 F.Supp. at 272; *Guiterrez. v. Butz,* 415 F.Supp. 827, 830–831 (D.D.C. 1976); *see also Rodway v. USDA,* 514 F.2d 809, 819–820 (D.C.Cir.1975).

■ The matters with which the parties to this suit are faced are ones of urgency, and while the Court will endeavor to formulate a decree that is reasonable in the exercise of its equitable powers, the Court deems it only fair and appropriate to put the defendant on notice that the Court rejects his contention that he need only bring Virginia's Food Stamp Program into "substantial compliance" with the federal timeliness requirements. The law requires *full* compliance absent what is hoped will be minimum human error. Lack of staff or funds is not legally excusable, and this Court will not consider these hurdles in formulating a decree that mandates full compliance with federal law.

An appropriate Order shall issue.

## ORDER

For the reasons stated in the Memorandum this day filed and deeming it proper so to do, it is ADJUDGED AND ORDERED as follows:

The following persons are entitled to the benefits of this Order.

A. All past, present, and future applicants who are eligible to receive Food Stamp benefits in the Commonwealth of Virginia, who have been or will be entitled to the expedited issuance of Food Stamps, and who have been or will be denied the expedited issuance within the time periods required by 7 U.S.C. § 2020(e)(9) and 7 C.F.R. § 273.2(i)(3)(i);

B. All past, present, and future applicants who are eligible to receive Food Stamp benefits in the Commonwealth of Virginia who have been or will be denied the right to be given notification of the right to file an application for Food Stamps on the date that they advise VDSS or local agencies under the supervision of VDSS of their interest in food assistance.

C. All past, present and future applicants for Food Stamps in the Commonwealth of Virginia who have been or will be denied the right to have their eligibility for assistance determined and have Food Stamps provided if they are eligible within thirty (30) days of the date the household applied as required by 7 U.S.C. § 2020(e)(3) and 7 C.F.R. 273.2(g) and (h).

This Order is not intended to limit the scope of the class as certified by Order of this Court dated May 6, 1991 for any other proceedings that may occur in this litigation, with regard to other class members certified in this action.

The Defendant shall, within fifteen (15) days of the entry of this Order, and continuing for thirty (30) days thereafter, notify any class members who are entitled to the benefit of this Order, whose application for Food Stamp assistance has been pend-

ing longer than thirty days, that a determination of eligibility and receipt of their Food Stamps are overdue pursuant to federal law. The form and content of the notice shall inform the individual that if they do not receive their Food Stamps or a denial letter immediately, they should call the toll free phone number of the Timely Issuance Hotline (1–800–552–3431) (in Richmond 662–9973) and request immediate help. Food Stamp benefits, a denial letter, or information on further action required by the applicant will then be made available to the caller within two business days of receipt of the call. If the request is received on Thursdays before 3:00 p.m., benefits will be provided by the close of business on Friday. For calls received before 3:00 p.m. on Fridays, benefits will be provided to the callers by the close of business the following business day.

The Defendant shall, within ten (10) days of the entry of this Order, notify any class members who are entitled to the benefits of this Order, whose application for Food Stamps has been identified by the Defendant as entitled to expedited benefits, and whose benefits have not been made available within five (5) days, that a determination of eligibility and Food Stamp assistance are overdue pursuant to federal law. The notice shall inform the individual that if they do not receive their Food Stamps or a denial letter within twenty-four (24) hours of the date of the notice, they should call the toll free phone number of the Timely Issuance Hotline (1–800–552–3431) (Richmond 622–9973) and request immediate help. Food Stamp benefits, a determination of eligibility, or information on further action required of the applicant, will then be made available to the caller within one (1) business day of the receipt of the call.

The Defendant will, within five (5) business days of this Order, submit to the Court for its approval the form of flyer herein referred to, and within five (5) days of this Court's approval require all local agencies to provide all applicants for Food Stamp assistance with a flyer outlining the timeliness requirements of the Food Stamp Act and the availability of the Timely Issuance Hotline, including the toll free telephone number, as a means to resolve delays in the processing of Food Stamp applications. Upon the filing of an application, the eligibility worker in the locality will place conspicuously on the flyer the date on which a determination of ineligibility will be required, or the date upon which Food Stamps are to be made available to the applicant. The Timely Issuance Hotline, with sufficient rollover numbers to meet the demand, will be open during all normal business hours of VDSS and by manner by a sufficient number of VDSS staff to meet the number of requests for help. The flyer will contain directions to the applicant informing him or her that if a decision of ineligibility for Food Stamps has not been provided timely, he or she should call the Timely Issuance Hotline (1–800–552–3431) (Richmond 662–9973) and inform the Hotline that his or her application was not processed timely. Once an applicant has contacted the Timely Issuance Hotline, VDSS will immediately investigate the matter. VDSS will notify the applicant on the next business day that the applicant is either eligible or ineligible for Food Stamp assistance and that, if eligible, Food Stamp benefits will be provided on the next business day unless such eligibility is determined on a Friday before 1:00 p.m., in which event benefits will be provided before the close of business on that day.

The reverse side of the flyer will contain information concerning the availability of a local legal aid office, including its telephone number, in the jurisdiction where the applicant has applied for Food Stamp assistance and that they may be used to resolve any problems. The Timely Issuance Hotline shall keep a record of contact by applicant name, jurisdiction, time of contact, results of investigation, reason for the delay in the timely processing of the application and whether or not the applicant was entitled to expedited issuance. Notice of the existence of the Timely Issuance Hotline shall be posted in all local offices, and notice of the availability of the Unit shall be given to all social service agencies in the Commonwealth. The Defendant will provide a necessary number of these flyers to the Plain-

tiffs. The form and content of the flyer shall be submitted to the Plaintiffs for comment if any.

The parties agree that "making available" shall mean one of the following:

(i). that an authorization to participate (ATP) document will be available to the picked up by the applicant at the local agency and an issuance center will be open. Alternatively, the ATP will be placed in the mail at the request of the applicant;

(ii). that Food Stamps will be available for pickup at the local agency by the applicant. Alternatively, Food Stamps will be placed in the mail at the request of the applicant.

The Defendant shall require VDSS to prepare for the Plaintiffs' counsel a written report identifying by local office the number of applicants who have called the Timely Issuance Hotline together with the results of the Unit's ability to resolve the timeliness violations. The Defendant will maintain a log containing the name of persons who have called the Unit, the facts surrounding any delay, the reasons for the delay, when application was made, and when Food Stamps were provided. The Defendant shall make this log available to counsel for the Plaintiffs for inspection on a weekly basis, subject to the protective order previously entered.

The Defendant is mandatorily enjoined to cause the processing of Food Stamps applications in accord with mandatory requirements contained in the federal law. An agency shall be considered in compliance with these requirements if their performance is within the following margins of error for the periods of time designated below:

No more than 0% of applications will be pending longer than the mandatory processing standards for both regular and expedited Food Stamps due to agency delay save for an acceptable error rate of 10% state-wide with the exception of those localities specified on Appendix "A" attached hereto. For those localities not specified, the acceptable error rate will be that allowed for the state as a whole.

By August 15, 1991 the Defendant will change its method of tracking compliance with the timeliness provisions of the Food Stamp Act to include whether or not the expedited Food Stamps are provided timely. Further, commencing on July 1, 1991 the Defendant will employ a system of tracking on a monthly basis of how many of the regular and expedited applications disposed of were overdue at the time that they were disposed. For the month of June, 1991 and for any month wherein the VACIS system is not manipulated to track compliance with the time standards for the provision of expedited benefits, the Defendant will require the 19 local agencies on the attached list to manually record the performance of the provisions of this service. It is contemplated by the Court that the statistical measure outlined above as well as the current CATSTAT data will be available for measuring compliance with the schedules herein identified. In the event that the new measures show compliance and the CATSTAT data do not or visa versa, either party may ask the Court to resolve which of the two is the appropriate measure of compliance.

IT IS FURTHER ORDERED that according to statistics generated for the month of September, 1991 no more than 0% of applications will be pending longer than the mandatory processing standards for both regular and expedited Food Stamps due to agency delay, save for an acceptable error rate of no more than 5% statewide with the exception of those agencies specified herein on the attached list. For those localities not specified, the acceptable error rate will be that allowed for the state as a whole; and

that according to the statistics generated for the month of December 1991, no more than 0% of the applications will be pending longer than the mandatory processing standards for both regular and expedited Food Stamps due to agency delay, save for an acceptable error rate of no more than 4% statewide with the exception of those agencies specified on the attached list. For those localities not specified, the acceptable error rate will be that allowed for the state as a whole; and

The Court directs that for the month of January, 1992 no more than 0% of the applications will be pending longer than the mandatory processing standards for both regular and expedited Food Stamps due to agency delay, save for an acceptable error rate of 3% in each of the local agencies.

Unless federal law requires that the issuing agencies take action on an application, applications shall not be denied simply because the time period for processing an application has expired.

By August 1, 1991, the Defendant shall develop a policy of training and management evaluation wherein the Defendant shall monitor the local agencies in accord with the requirement outlined in 7 C.F.R. § 275.5 *et seq.* to ensure that the local agencies who are required to submit corrective action plans have, in fact, corrected the deficiencies that the management reviews have uncovered. The System shall include timely monitoring of the corrective action plans of the localities within defined time limits. Plaintiffs will have an opportunity to comment prior to the adoption of any final plan. The Defendant shall begin training VDSS staff no later than August 15, 1991 in the implementation of any new policy and in the proper implementation of federal regulations regarding the processing of Food Stamp applications.

The Defendant shall report to the Plaintiffs' attorneys, other than the weekly reports outlined in Part V above, on a monthly basis as to the Defendant's progress towards compliance with the timeliness standards of the Food Stamp Act. These reports shall include, but are not limited to, reports of overdue and pending applications, progress reports on the development of a more valid statistical reporting system, reports on status of any management and evaluation reviews being conducted by the Defendant, and cases handled by the Timely Issuance Hotline. In addition, the Defendant shall notify Counsel for the Plaintiffs of any Management Evaluation reviews of the local agencies that occur during the pendency of this litigation and shall solicit their comments.

The Defendant shall within three (3) working days of the entry of this Order issue a bulletin to all local programs stating that the Defendant has been Ordered by the Court to take all steps within his power to stop all systemic program access violations effective immediately. Program access violations include the following:

1) Limiting the hours or days of the week on which Food Stamp applications will be accepted;

2) For agencies that use appointment systems to regulate the flow of interviews telling a person who contacts a local office to request for Food Stamp assistance a future date for an interview without telling that person that he or she can and should file an application immediately because retroactive benefits run from the date of the application and because time requirements for processing the application also run from the date of application;

3) For agencies that use limited hours or days of the week or daily quotas to regulate the flow of interviews, telling a person who contacts a local office to request Food Stamp assistance that the office only conducts interviews on certain days of the week or at certain hours on some days or that the office conducts a fixed quota of interviews each day so the client may need to get there early without also telling that person that he or she can and should file an application immediately because retroactive benefits run from the date of application and time requirements for processing the application also run from the date of application.

Defendant shall monitor compliance of all local agencies on program access including blind testing, community contacts, observations in the waiting rooms, or other methods sufficient to monitor whether an agency is in practice complying with Defendant's official policy. All large and medium project areas, as defined in the Code of Federal Regulations, are to be monitored within six months. All small project areas, as defined within the Code of Federal Regulations, are to be monitored within one year.

Each party is directed to advise the Court of any violation of this Order.

## APPENDIX A
### Acceptable Compliance Rates for Specific Agencies

| Agency | 7/91 | 10/91 | 12/91 | 1/92 |
|---|---|---|---|---|
| Alexandria | 80 | 87 | 93 | 97 |
| Arlington | 75 | 87 | 93 | 97 |
| Fairfax | 70 | 90 | 93 | 97 |
| Fredericksburg | 93 | 94 | 95 | 97 |
| Pr. William | 90 | 93 | 95 | 97 |
| Spotsylvania | 90 | 93 | 95 | 97 |
| Chesterfield | 93 | 94 | 95 | 97 |
| Henrico | 94 | 95 | 96 | 97 |
| Hopewell | 94 | 95 | 96 | 97 |
| Petersburg | 90 | 93 | 95 | 97 |
| Richmond | 85 | 90 | 95 | 97 |
| Accomack | 90 | 93 | 95 | 97 |
| Chesapeake | 93 | 94 | 95 | 97 |
| Hampton | 85 | 90 | 95 | 97 |
| Newport News | 91 | 93 | 95 | 97 |
| Norfolk | 85 | 90 | 95 | 97 |
| Portsmouth | 90 | 93 | 95 | 97 |
| VA Beach | 85 | 90 | 93 | 97 |
| Lynchburg | 90 | 93 | 95 | 97 |
| STATEWIDE * | 90 | 95 | 96 | 97 |

\* Also applies to each locality not specified above