Joyce ROBERTSON; Jim Lee Casey; Carl Thomas Robertson; April Liddon; Walter Gordon, Plaintiffs–Appellees,

v.

Larry D. JACKSON, in his official capacity as Commissioner of the Virginia Department of Social Services, Defendant–Appellant.

No. 91–2580.

United States Court of Appeals, Fourth Circuit.

Argued March 4, 1992.

Decided July 20, 1992.

As Amended Aug. 12, 1992.

Barbara J. Gaden, Asst. Atty. Gen., Richmond, Va., argued (Mary Sue Terry, Atty. Gen. of Va., Roger L. Chaffe, Thomas J. Czelusta, Sr. Asst. Atty. Gen., Diane B. Beck, Asst. Atty. Gen., on brief), for defendant-appellant.

John Joseph Wall, Legal Services of Northern Virginia, Manassas, Va., argued (Meryl C. Maneker, Virginia Poverty Law Center, Anne B. Holton, Central Virginia Legal Aid Soc., Richmond, Va., Robert J. Golcheski, Virginia Legal Aid Soc., Lynchburg, Va., Brenda J. Gilliam, Brown, Brown & Watkins, Alexandria, Va., on brief), for plaintiffs-appellees.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and MURRAY, Senior District Judge for the District of Maryland, sitting by designation.

OPINION

MURNAGHAN, Circuit Judge:

Plaintiffs, later certified as a class consisting of all Virginia residents who have applied for, attempted to apply for, or will request food stamps, filed an action on April 15, 1991, in the United States District

Court for the Eastern District of Virginia, against the Commissioner of the Virginia Department of Social Services ("VDSS"), Larry D. Jackson ("Commissioner"), in his official capacity, seeking declaratory and injunctive relief to remedy alleged violations of federal law concerning the acceptance and processing of applications for food stamp assistance. The district court granted the relief sought. *See Robertson v. Jackson*, 766 F.Supp. 470 (E.D.Va.1991). On appeal, the Commissioner has contested the district court's finding that Virginia's local departments of social services operate as the Commissioner's agents in the administration of the food stamp program. He has also contested the court's imposition of an injunction compelling him to ensure full compliance with the obligations of federal law, and the finding that he is fully responsible for ensuring Virginia's compliance with the federal food stamp program. The issue of whether other parties are necessary to the instant action has been raised as well.

## I.

Under the Federal Food Stamp Program, coupons for the purchase of food are provided to indigent persons with the goal of reducing hunger and malnutrition. 7 U.S.C. § 2011 *et seq.* The program is operated by the Food and Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA") and each state choosing to participate. It involves the distribution of coupons to purchase food at USDA-approved grocery stores. *Id.* § 2016. While the coupons are financed 100% by USDA, the administrative costs are shared between each participating state and the federal government. *Id.* § 2025(a).

Plaintiffs' complaint alleged widespread violations of the federal regulations regarding the issuance of food stamp assistance. Federal regulations governing operation of the program include standards to ensure the timely processing of applications and the accessibility of food stamps to qualified persons. The regulations regarding timeliness require the delivery of benefits within thirty days after an eligible applicant files

a food stamp application. 7 C.F.R. § 273.2(g). Applicants deemed eligible for expedited services are entitled to receive benefits within five days of their initial application. *Id.* § 273.2(i). The application process must be designed to identify applicants who are eligible for such expedited service. *Id.* The program access regulations give a person the right to file a food stamp application on the same day that she or he contacts the food stamp office during office hours, and those who inquire are to be encouraged to file an application on the day of initial contact. *Id.* § 273.2(c). Plaintiffs alleged that Virginia, in operating the food stamp program, failed to meet both the five and the thirty day limits for the provision of food stamps to eligible applicants. It also failed to permit or encourage those who requested benefits to apply on the day assistance was first sought.

In response, the Commissioner acknowledged that a number of Virginia local agencies were not in substantial compliance with the federal timely processing requirements. He argued, however, that only declaratory relief and not injunctive relief was appropriate, on the ground, *inter alia,* that steps to resolve the problems had already been taken and were continuing. The district court, after conducting a trial on an expedited basis, issued an opinion and order subsequently published as *Robertson v. Jackson*, 766 F.Supp. 470 (E.D.Va.1991), to which we direct attention for a more detailed presentation of the facts.

The federal food stamp program is administered in each state by a "state agency," which is defined to include the local administrative agencies as well as the agency of state government in those states in which public assistance programs are operated on a "decentralized basis." 7 U.S.C. § 2012(n)(1). Virginia's social service system is such a decentralized program. The administration of social services in Virginia is governed by a statutory framework establishing specific responsibilities for both local (city and county) institutions and state institutions. The institutions and individuals involved in delivering

food stamp benefits in Virginia are (1) VDSS, an executive department responsible to the Governor, Va.Code § 63.1–1.1 (Michie 1987); (2) the Commissioner of Social Services, appointed by the Governor and confirmed by the General Assembly, who supervises and manages VDSS, *id.* § 63.1–2; (3) the State Board of Social Services ("State Board"), *id.* § 63.1–14; (4) the local social service agencies that administer public assistance programs in the respective counties and cities, *id.* § 63.1–38.1; and (5) the local governing bodies and the members of the local boards of social services, *id.* §§ 63.1–38, 63.1–39. A number of statutes divide responsibility for the actual delivery of food stamp benefits among those parties. VDSS is the executive agency of the Commonwealth with the responsibility for overseeing the administration of Virginia's public aid and assistance programs, *id.* §§ 63.1–4, 63.1–31, while it is the State Board that is empowered to implement the food stamp program in the Commonwealth, *id.* § 63.1–25.2. The State Board serves as an advisor to the Commissioner, *id.* § 63.1–24, and establishes standards for the appointment of local directors and superintendents, *id.* § 63.1–26 (Supp.1990). The Commissioner is to enforce the Board's personnel standards and to remove employees not meeting the standards. *Id.* § 63.1–37 (Michie 1987). The local social service agencies accept applications for federal food stamp benefits and investigate to determine eligibility. *Id.* §§ 63.1–107, 63.1–109. The State Board can compel action by local authorities to meet federal requirements for operation of the food stamp program. *Id.* § 63.1–122. If local authorities refuse to comply, the State Board "shall authorize and direct the Commissioner ... to provide for the payment of assistance or the furnishing of benefits ..." at the local level out of the funds appropriated for the provision of public aid and assistance. *Id.* § 63.1–123. In addition, the State Board can authorize and direct the Commissioner to withhold all or part of the reimbursement for administrative expenses from local agencies that fail to operate assistance programs in compliance with state laws and regulations. *Id.*

In describing the relationship between the state agency and the local agencies as it pertains to the food stamp program, the district court stated that the local agencies are the agents of the Commissioner: "Virginia has 124 local social service agencies that accept and process all food stamp applications. In so doing, they act as agents for the defendant in matters relating to the Program within their jurisdictions. Va. Code § 63.1–67.3, et seq." 766 F.Supp. at 472. In setting forth the evidence as to violations of the federal processing standards, the court found "widespread" and "egregious" failures to meet the requirement to process applications for food stamp assistance within thirty days, and to process expedited applications within five days. *Id.* at 473. Furthermore, the court found violations of the requirement to inform those who inquire about food stamps that they should file an application on that day. *Id.* at 474. Some inquirers were told that they had to schedule an appointment to determine their eligibility on a day other than the day they first called, without being informed that they should file the application itself as soon as possible, and other inquirers were told that applications could only be filed on certain days. *Id.*

The district court also made findings regarding the knowledge and actions of the Commissioner. The court found that the Commissioner had knowledge of the egregious nature of the violations over a year before plaintiffs filed the instant action. *Id.* Also, the court found that VDSS had failed to authorize and fund additional staff positions in sufficient numbers to keep pace with the increase in the applications for food stamps. *Id.* at 475. The court further found that VDSS had reduced budget allocations to the local agencies at least twice in that current fiscal year. *Id.* The court stated that Jackson, "as commissioner of VDSS, is fully responsible for insuring Virginia's compliance with the Federal Food Stamp Act and implementing regulations." *Id.* at 476. Finding that VDSS had not undertaken sufficient efforts to ensure that the problems would be appreciably improved such that voluntary compliance

with federal requirements was likely to occur in the near future, the court concluded that it was appropriate to "enjoin the defendant in his official capacity from failing to bring the Virginia Food Stamp Program forthwith into compliance with the Food Stamp Act." *Id.*

The district court's order included a number of actions which the Commissioner was directed to undertake, most of which are not challenged on appeal. The order also stated that the Commissioner "is mandatorily enjoined to cause the processing of Food Stamps applications in accord with mandatory requirements contained in the federal law." *Id.* at 478. Compliance rates were set by the court: the order specified that compliance would mean that no more than 0% of applications would pend longer than the federal timeliness standards for regular and expedited applications as a result of agency delay, although a state-wide error rate of 10% would be acceptable; nineteen specific agencies listed in an attached appendix were permitted to have lower compliance rates for a period of time.[1] The court further ordered that, except for the agencies in the attachment, the statewide error rate would be only 5% after September, 1991, 4% after December, 1991, and 3% after January, 1992.

## II.

We turn first to the contention that the district court erred in finding that the "124 local social service agencies that accept and process all food stamp applications.... act as agents for the Commissioner in matters relating to the [Food Stamp] Program within their jurisdictions." 766 F.Supp. at 472. That finding was based in part on the following state statute: "**Agent of Commissioner.**—The local superintendent shall act as agent for the Commissioner in relation to any work to be done by the Commissioner within the county or city." Va.Code § 63.1–67.3. The Commissioner has vigorously protested both the district court's finding that the

local service agencies act as his agents, and, particularly, the reliance on that statute for so finding. He has argued that the statute makes a local superintendent an agent of the Commissioner only for work to be done by the Commissioner at the local level, whereas the processing of applications and the distribution of benefits is, by Virginia statute, to be carried out by the local agencies.

He has pointed to the extensive network of state statutes governing the relationship between the various bodies administering social services to support his claim that he is not authorized under state law to wield control over the local agencies, so that they could not properly be deemed to be his "agents." *See, e.g.,* Va.Code §§ 63.1–40, 63.1–43 (local boards of social services that administer public assistance programs in a city or county are appointed by local governing bodies); *id.* § 63.1–50 (the State Board issues the regulations governing administration of public aid and assistance programs); *id.* § 63.1–60 (the local director or superintendent in each city or county is appointed by the local board, pursuant to personnel standards promulgated by the State Board); *id.* (employees at local agencies are hired by either local board or local superintendent); *id.* § 63.1–62 (Commissioner can only remove a local superintendent or employee who does not meet the State Board's personnel standards). Thus, he has contended that the local agencies cannot be his "agents" because of Virginia's statutory division of administrative responsibilities between VDSS, the State Board, the local boards, and the local agencies.

Moreover, in his brief, the Commissioner has argued that the "finding of an agency relationship between the Commissioner and local agencies exposes the Commissioner to liability for acts of negligence or malfeasance by local employees and allows local superintendents to bind the Commissioner by their respective statements and actions, even when their interests may be diverse

---

1. The attached appendix set up a schedule for those nineteen agencies, and set specific compliance rates, so that within six months each

would be required to achieve a rate of 97% compliance.

or adverse." Appellant's Brief at 8 (footnote omitted). When pressed at oral argument, counsel for the Commissioner raised the spectre of "drastic ramifications" if we let the finding stand, due to the implications of the law of agency.

While we find some merit to the claim that an interpretation of the statute that deems the local agencies to be agents of the Commissioner for purposes of administering the federal food stamp program is not consistent with the extensive statutory scheme dividing responsibility for administration among local bodies and state bodies, we decline to address the claim. Although the Commissioner has contended that the district court concluded that he is fully responsible for compliance based upon the finding that the local agencies are his agents, we think that the court's opinion clearly suggests otherwise. The finding as to an agency relationship was but one sentence in the district court's description of the federal food stamp program and its administration in Virginia. As our discussion in part III indicates, the court's finding that the Commissioner is ultimately responsible for compliance with federal law is sound, irrespective of any finding as to a statutory basis for regarding the local agencies as the Commissioner's agents in accepting and processing food stamp applications.

### III.

In arguing that the district court erred in holding him fully responsible for causing the processing of food stamp applications to comply with federal law, the Commissioner has claimed that neither federal law nor state law considers him to be solely responsible. He points to 7 U.S.C. § 2012(n)(1), which defines "State agency" as:

the agency of State government, including the local offices thereof, which has the responsibility for the administration of the federally aided public assistance programs within such State, and *in those States where such assistance programs are operated on a decentralized basis, the term shall include the counterpart local agencies administering such programs....*

(Emphasis supplied). Since Virginia conducts its social services on a decentralized basis, he has maintained that the local agencies that administer the programs are held responsible in their own right for complying with federal law. Pointing to the division of responsibility for administering the program under Virginia statutes, he has contended that the injunction orders him to do more than he is empowered to do under state law.

We conclude that the district court did not err in holding the Commissioner "fully responsible" for ensuring compliance with federal laws and regulations. As Commissioner of VDSS, he is in charge of the state agency which is held responsible to the federal government for administration of the food stamp program. The Commissioner of VDSS signs a "Federal/State Agreement" on behalf of the Governor, which is the "legal agreement between the State and the [USDA]," 7 C.F.R. § 272.2(a)(2), in which the State undertakes to "[a]dminister the program in accordance with the provisions contained in the Food Stamp Act of 1977, as amended, and in the manner prescribed by regulations issued pursuant to the Act...." *Id.* § 272.2(b). Federal regulations obligate VDSS to monitor compliance with federal law and ensure that corrective action is taken to correct deficiencies. *Id.* §§ 275.5, 275.16, 275.18, and 275.19(b). Although the state is permitted to delegate administrative responsibility for the issuance of food stamps, "ultimate responsibility" for compliance with federal requirements nevertheless remains at the state level. *Woods v. United States,* 724 F.2d 1444, 1447–48 (9th Cir.1984) (holding that the State of California can be held responsible for violations of the Food Stamp Act committed by the local administrative unit of San Francisco); *California v. Block,* 663 F.2d 855, 858 (9th Cir.1981) ("Administration of the [food stamp] program could be delegated to local or state agencies, but the ultimate responsibility for operation of the plan remained with the state"); *Moore v. Perales,* 692 F.Supp. 137, 139 (E.D.N.Y.1988) (describing the state as

"ultimately responsible" for ensuring that the local agencies which administer the food stamp program meet the requirements of federal law).

We cannot agree with the Commissioner's claim that the definition of "state agency" is an indication that the agency of state government that enters the agreement with the federal government is less than fully responsible for ensuring compliance with federal requirements. Prior to 1977, "state agency" was defined as "the agency of State government which is designated by the Secretary [of Agriculture] for purposes of carrying out this act in such State," but the definition of "state agency" was expanded in 1977 so as to "include the counterpart local agencies" in those states that operate assistance programs on a decentralized basis. *See* 7 U.S.C.S. § 2012 (Law. Co-op.1985) (amended by Pub.L. 95–113, 91 Stat. 958, 960, Title XIII, § 1301, Sept. 29, 1977). However, the congressional Committee on Agriculture that reformed the Food Stamp Act in 1977 gave no indication that defining "state agency" so as to refer also to the "counterpart local agencies" should serve to diminish the placement of ultimate responsibility for compliance with federal obligations at the state level. On the contrary, the Committee's report contemplates that such responsibility for administering the program remains at the state level:

> In essence, state welfare agencies are responsible for the day-to-day administration of the food stamp program (under Federal Rules) and a substantial portion of their administrative costs. In a number of states, these responsibilities are passed down to local welfare agencies because of the structure of the state's welfare system. The state, however, remains ultimately responsible and is the unit with which the [USDA] deals.

H.R.Rep. No. 95–464, 95th Cong., 1st Sess. 299 (1977), *reprinted in* 1977 U.S.Code Cong. & Admin.News 1971, 1704, 2235. Indeed, the Committee recognized that those states passing responsibility on to local agencies may have to intervene and operate the program at the local level:

> Food stamp eligibility and benefit determination (certification) is a state responsibility. Most often it is performed by local welfare agencies who are either semi-autonomous (under general state supervision) or actually part of the state welfare agency. Though actual certification is accomplished at the local level, the state is held responsible for the procedure. In some cases, where local welfare agencies have refused to operate the food stamp program, the state has stepped in and is administering the program on a local basis.

*Id.* at 2193. Thus, Virginia's statutory requirement that the State Board authorize and direct the Commissioner to operate on a local level if local agencies fail to comply, Va.Code § 63.1–123, is consistent with the Committee's perspective on the concomitant delegation of responsibility to local agencies *and* the retention of ultimate responsibility at the state level. A state that chooses to operate its program through local, semi-autonomous social service agencies cannot thereby diminish the obligation to which the state, as a state, has committed itself, namely, compliance with federal requirements governing the provision of the food stamp benefits that are funded by the federal government. The expansion of a definition so as to include the local agencies in references to the "state agency" does not evince any intent to diminish the "ultimate responsibility" for compliance with federal requirements that is placed on a state electing to participate in the federal food stamp program. In addition, the definition of "state agency" provided in the Code of Federal Regulations casts a different tenor on the relationship between the local agencies and the state agency:

> *State agency* means: (1) The agency of State government, including the local offices thereof, which is responsible for the administration of the federally aided public assistance programs within the State, and in those States where such assistance programs are operated on a decentralized basis, it *includes the counterpart local agencies which administer such assistance programs for the State agency....*

7 C.F.R. § 271.2 (emphasis supplied). That definition specifies that the counterpart local agencies administer the program "for," or on behalf of, the state agency.

We are not unsympathetic to the Commissioner's concern that his power is limited under state laws governing the state social service system. Nonetheless, under federal law, the Commissioner is held fully responsible for ensuring compliance. As far as actually *causing* compliance is concerned, no evidence has been presented to suggest he cannot do so with the authority he enjoys under Virginia law. He can urge the State Board to act to compel local agencies to comply. Va.Code § 63.1–122. If a local agency fails to provide payments in accordance with the requirements, the State Board must authorize and direct the Commissioner to provide for the furnishing of benefits himself, and may authorize and direct him to withhold from the local agency the funds provided for administrative expenditures. *Id.* § 63.1–123. There is no evidence that such means are necessary, but neither is there any indication that the Commissioner has attempted to use those wide-ranging powers expressly granted to him by Virginia law. To the contrary, the district court found that VDSS had neither authorized nor funded enough additional staff positions at the local agencies to enable them to process the increased number of applications in a timely fashion. 766 F.Supp. at 475. Additionally, the court found that VDSS had reduced the budget allocations to local agencies at least twice in that fiscal year. *Id.* Therefore, we do not accept the Commissioner's claim that the state statutory scheme dividing responsibility between the various bodies involved in administering the food stamp program prevents him from complying with the district court's order.

The potentiality that the Commissioner may, at some future time, be unable to cause a particular local agency to comply with federal requirements does not relieve him of his responsibility under federal law to attempt fully to ensure compliance. In the event that a contempt order should be issued against the Commissioner, the de-fense of impossibility of compliance would be available if he had done everything within his power to comply with the district court's order. *See United States v. Rylander,* 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983). "Impossibility of perfect compliance, then, may be a defense to contempt, but it does not preclude an injunction requiring compliance with the regulations when a pattern of non-compliance has been shown to have existed." *Withrow v. Concannon,* 942 F.2d 1385, 1388 (9th Cir.1991). Therefore, the fact that the Commissioner may be unable to bring the entire Virginia system into full compliance, such that impossibility may well be a defense to contempt, does not, of itself, preclude issuance of an injunction mandating that the Commissioner try vigorously to compel compliance with federal statutes and regulations governing the food stamp program.

## IV.

■ The Commissioner has contended that, if we uphold the injunction, the State Board is a necessary party to the instant action, because only the State Board can compel the local agencies to comply with federal obligations in processing food stamp applications. Alternatively, he has argued that those local agencies not in compliance with federal requirements are necessary parties. Federal Rule of Civil Procedure 19(a)(1) requires joinder of a party in whose absence "complete relief cannot be accorded among those already parties" to the action.

The plaintiffs have responded by arguing, first, that the Commissioner should be foreclosed from raising the issue on appeal because he neither moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(7) for failure to join a party under Rule 19, nor sought joinder when the district court queried as to whether the local agencies should be joined, and, alternatively, that the State Board and the local agencies are not necessary parties because the Commissioner has the power to provide

meaningful relief.[2] We do not address the question of whether we should refuse to entertain the claim of necessary parties, because we do not believe that either the State Board or the local agencies are parties that must be joined to grant complete relief.

The district court's order, requiring the Commissioner to bring about full compliance with federal timely processing and program access requirements, cannot be considered either "partial" or "hollow" relief. *See* Fed.R.Civ.P. 19(a)(1) advisory committee's note; 3A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice*, ¶ 19.07–1[1] (2d ed. 1991) (joinder is not necessary "where, although certain forms of relief are unavailable due to a party's absence, meaningful relief can still be provided") (footnote omitted). To the contrary, the Commissioner's argument before the district court attempting to ward off issuance of the injunction stood on the point that he expected to be able to ensure compliance through the voluntary actions that the VDSS already had begun. Neither the State Board nor the local agencies has been shown to be an impediment to the achievement of full compliance with the federal regulations. While it is the State Board and not the Commissioner with the authority to compel action by a recalcitrant local agency, Va.Code § 63.1–122, the Commissioner has not argued that an order from the State Board to the local agencies is necessary to ensure compliance, nor is there evidence in the record to suggest that he has asked the State Board to undertake such measures. Again, we note that the district court specifically found that the Commissioner failed to take measures necessary to enable the local agencies to comply, *e.g.*, authorization for and funding of additional staff positions. 766 F.Supp. at 475. While we have stated that a court "ought not grant relief against a public official unless its order will be effective," *Thaxton v. Vaughan*, 321 F.2d 474, 478

(4th Cir.1963), review of the record before us has convinced us that the district court's findings are supported by substantial evidence and that meaningful relief can be obtained by the Commissioner.

The order of the district court, together with the pertinent accompanying decision, is, therefore,

AFFIRMED.

---

**2.** As further support for their position that the State Board and local agencies are not necessary parties, the plaintiffs have contended that members of the State Board and the local agencies are already potentially subject to a contempt citation for any violations of the injunction issued against Jackson, even as nonparties to the present suit. *See* Fed.R.Civ.Proc. 65(d); *see also Pasco Int'l (London) Ltd. v. Stenograph Corp.,* 637 F.2d 496, 501 (7th Cir.1980). Because that question is not presently before us, we do not address it.