Clara ALEXANDER, et al., Plaintiffs,

v.

Renee HILL, et al., Defendants.

No. C–C–74–183–M.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Nov. 4, 1982.

**1356**

Theodore O. Fillette, Jr. and Lark Hayes, Reita P. Pendry, Pam Silberman and Jean M. Cary, of counsel, Legal Services of Southern Piedmont, Charlotte, N.C., for plaintiffs.

Steven M. Shaber, Asst. Atty. Gen., N.C. Dept. of Justice, Raleigh, N.C., and William H. McNair and Marvin A. Bethune, Ruff, Bond, Cobb, Wade & McNair, Charlotte, N.C., for defendants.

## ORDER

McMILLAN, District Judge.

This suit has been pending over eight years. In 1975, the court originally determined that defendants were not complying with the law. It is time to get on with compliance. Although in large part this order simply restates previous orders, the court now finds it necessary to take measures to bring defendants in line with their obligations under those orders and federal law.

On August 28, 1974, plaintiffs filed this suit alleging that defendants and their local agencies were not processing applications for Aid to Families with Dependent Children ("AFDC") and Medicaid in a timely fashion. Federal regulations require that AFDC and Medicaid applications be processed within forty-five (45) days of filing, except for those applications for Medicaid based on disability, which must be processed in sixty (60) days. 42 C.F.R. § 435.911; 45 C.F.R. § 206.10(a)(3). The state defendants are required by the regulations to supervise the administration of the AFDC and Medicaid programs and to insure that the counties process applications in timely fashion. 42 C.F.R. § 435.904; 45 C.F.R. §§ 205.120 and 206.10(a)(12).

On August 8, 1975, the court ordered defendants to develop and implement a plan for the timely taking and processing of applications. Since then, plaintiffs have applied to this court on numerous occasions for further relief to insure timely processing. On November 14, 1977, the court ordered defendants to take further steps to insure that all AFDC and Medicaid applications are timely processed, unless they are overdue with "good cause" as specifically defined in the court's order. The court also directed defendants to submit to the court and to plaintiffs' counsel monthly reports showing the number of applications pending *with* "good cause" and *without* "good cause" in each county of the state. The court warned defendants that if they failed to secure compliance with the order to timely process, it would consider assessing liquidated damages in favor of eligible applicants whose applications are delayed without good cause.

Following another motion by plaintiffs for further relief, the court, in an order of March 30, 1979, supplemented and clarified its previous orders, but again declined to impose sanctions on the defendants for their failure to bring the state's AFDC and Medicaid programs into compliance with federal law.

On October 23, 1981, plaintiffs moved the court to allow them access to the records of five county departments of social services so that they could investigate continued delays in the processing of AFDC and Medicaid applications and could verify the monthly reports filed by defendants pursuant to the court's orders. Plaintiffs ex-

pressed skepticism about the accuracy of these reports. They pointed out, for example, that as of June 30, 1981, over 85% of all pending AFDC applications in the state had been pending 40 days or longer, yet the state classified only 5.2% of these as pending without "good cause." The court ordered defendants to provide plaintiffs access to the records as requested.

After investigating the records of Mecklenburg, Wake and Stokes counties, plaintiffs filed yet another motion for further relief. Plaintiffs alleged that Mecklenburg County had consistently reported a substantial percentage of its cases pending *without* "good cause," yet no efforts had been made by the defendants to correct this poor performance. In the other two counties, the reported percentage of cases pending without "good cause" was much smaller; however, plaintiffs, on the basis of their investigation, attacked these statistics as severely inaccurate. They claimed that in periods in which Wake and Stokes counties had reported *no* cases pending without "good cause," over 30% of those counties' cases pending 40 days or more were in fact pending *without* "good cause."

Plaintiffs moved the court to find defendants in contempt, to award plaintiffs penalties, damages and attorneys' fees, and to clarify and supplement the court's previous orders.

Defendants oppose plaintiffs' motion. They also ask the court to reduce from twelve (12) months to six (6) months the period during which AFDC and Medicaid applications must be held open.

The motions came on for hearing on August 2, 1982, with both sides represented by counsel. Based on the oral testimony at the hearing and all documents of record, the court makes the following findings of fact and conclusions of law.

## A. FINDINGS OF FACT

1. Plaintiffs investigated a statistically significant random sample of cases pending 40 days or more as of August 31, 1981, in Mecklenburg and Wake counties. Plaintiffs investigated all of the cases pending 40 days or more as of January 31, 1982, in Stokes County.

2. Plaintiffs' investigation of Mecklenburg County confirms the essential accuracy of Mecklenburg County's monthly reports for the month ending August 31, 1981. Defendants' monthly reports and the plaintiffs' investigation show that approximately 17% of the AFDC cases and 21% of the Medicaid non-disability cases pending 40 days or more were overdue (*i.e.,* pending beyond the federally imposed time standards) without "good cause."

3. Mecklenburg County has shown a consistent pattern of non-compliance with the court's April 3, 1979, injunction that defendants process AFDC and Medicaid applications within 45 days (or 60 days in cases based on disability). For example, defendants' monthly reports for the months ending October 31, 1981, through May 31, 1982, indicate that between 14.0% and 17.7% of the total AFDC cases and between 9.2% and 18.9% of the total Medicaid cases were overdue without "good cause." *See* attachments to the Affidavit of Q. Uppercue, dated July 27, 1982.

4. Both Wake and Stokes counties submitted inaccurate monthly reports during the period investigated by plaintiffs. Both counties had reported that *none* of their cases were overdue without good cause for the months in question. The parties *stipulated* at the hearing, however, that at least 27.6% of the cases pending 40 days or more in Wake County and at least 9% of the cases pending 40 days or more in Stokes County should have been classified as overdue without "good cause."

5. In the counties investigated by plaintiffs, defendants improperly classified as overdue *with* "good cause" cases in which the following occurred:

    (a) The county failed to notify the applicant within 20 days of the date of application of the information known to be needed to approve the application;

    (b) The county failed to process the application within five working days of the receipt of the last necessary information;

(c) The county failed to document the receipt of the last piece of necessary information;

(d) The county failed to process the application within applicable time limits even though all necessary information was in the file;

(e) The county failed to send information to the State Disability Section within 25 days of the date of application; and

(f) The Medicaid unit of the Disability Determination Section delayed the case beyond the 60-day time limit by waiting to adopt the Social Security unit's disability determination.

6. Defendants' monthly reports indicate that only approximately 2.1% of all cases throughout the state at large were overdue without "good cause" for the months ending October 31, 1981, through May 31, 1982. *See* Affidavit of Q. Uppercue, dated July 23, 1982, at ¶ 4. Defendants submitted affidavits from the directors of social services of the 97 counties not investigated by plaintiffs which stated that they knew and understood the processing and reporting requirements of this court's previous orders, and that they were accurately reporting the number of cases that were overdue without "good cause."

The court finds that plaintiffs' investigation raises questions about the accuracy of defendants' monthly reports state-wide. These doubts are compounded by the fact that some counties with a huge number of overdue cases classified only a handful as overdue without "good cause." For example, Cumberland County reported that it was responsible for the delay of only 7 of its 795 overdue AFDC applications and only 13 of its 1,073 overdue Medicaid applications.

Defendants have not investigated the accuracy of reports from any county other than the three investigated by plaintiffs. The court's doubts are not laid to rest by the self-serving form affidavits of the county directors.

7. Some delays in Medicaid cases involving "spend down" may be going unreported by the counties. A Medicaid applicant who meets all eligibility requirements but has excess income may be preliminarily "certified" for Medicaid though required to "spend down" the excess income on medical expenses before being "authorized" for Medicaid coverage. This arrangement is similar to a deductible clause in a private insurance policy. The applicant must provide information to the county to show that the deductible requirement has been met.

The court finds that once an applicant has been preliminarily "certified" for Medicaid benefits, the case is no longer included in the monthly reports. The monthly reports, then, do not reflect delays which occur after the "certified" applicant has provided all the necessary information and is awaiting "authorization" for Medicaid coverage.

8. In summary of the above findings, the court finds that while defendants have made some progress in the eight years since this action commenced, they have still seriously failed to comply with their obligations under federal law and this court's orders.

9. One of the most significant reasons for the delays in processing AFDC and Medicaid applications is the lack of sufficient county staff. State defendants have long been aware of this problem but have failed to take action to remedy it.

10. Defendants have further delayed the processing of Medicaid applications by refusing to treat applications for retroactive and prospective Medicaid coverage separately. Such delays are not reflected in defendants' monthly statistics.

Defendants acknowledge the good sense of processing these two types of applications separately since the county may have the information necessary to process one but not the other. Defendants therefore have indicated their agreement henceforth to require their local agencies to process retroactive and prospective Medicaid applications separately.

## B. CONCLUSIONS OF LAW

1. Federal law requires defendants and their local agencies to make prompt decisions on applications for AFDC and

Medicaid. Except under circumstances beyond defendants' control, such applications must be processed within forty-five (45) days (or within sixty (60) days in cases involving a disability determination). For AFDC cases, these time standards are computed from the date of application to the date the assistance check, or notice of denial of assistance, is mailed to the applicant. 45 C.F.R. § 206.10(c)(3)(i) and (ii). For Medicaid cases, these time standards are computed from the date of application to the date the notice of decision is mailed to the applicant. 42 C.F.R. § 435.911(a) and (b). The law requires that *all* applications—not merely a substantial percentage of them—be processed within the relevant time limits.

2. The defendants' failure to insure that all counties timely process AFDC and Medicaid applications violates the court's previous orders and the federal regulations. Defendants have neglected their statutorily imposed and court-ordered duty to supervise the counties' administration of public assistance programs and take corrective action when necessary. 42 C.F.R. § 435.904; 45 C.F.R. §§ 205.120, 206.10(a)(12).

3. The defendants' submission of inaccurate monthly reports on the counties' processing activity also violates the court's previous orders. Defendants have a duty under the court's orders and federal regulations to stay currently informed of the counties' adherence to the processing standard and defendants have failed to do so. 42 C.F.R. § 435.904, 45 C.F.R. §§ 205.120, 206.10(a)(12).

4. Defendants' improper classification of applications as overdue *with* "good cause," as described in ¶ 5 of the findings of fact, violates ¶¶ 1–5 of this court's order of March 30, 1979.

■ 5. Defendants' practice of delaying decision on Medicaid applications beyond sixty days in order to adopt the Social Security unit's disability determination violates federal regulations and this court's previous orders. *See* 42 C.F.R. § 435.911, 45 C.F.R. § 206.10(a)(3)(ii).

6. "Authorization" is part of the Medicaid eligibility process and must be done within the appropriate time limit when the applicant has provided all necessary information. 42 C.F.R. § 435.732(d).

■ 7. The court has the power to impose a remedial money sanction on a state agency in order to secure compliance by the agency with the court's orders. *Hutto v. Finney,* 437 U.S. 678, 691, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978).

Based on the foregoing findings of fact and conclusions of law,

IT IS HEREBY ORDERED:

1. That the previous orders in this case continue in effect as modified herein.

2. That in cases where disability is an issue the defendants shall designate each overdue application for AFDC or Medicaid as overdue either *with* "good cause" or *without* "good cause" as of the 60th day after the date of application; in all other cases they shall make such designation on the 45th day after the date of application.

■ 3. (a) That the defendants shall limit the concept of "good cause" for delay to cases in which the information necessary to determine eligibility was not provided to the department by the applicant or by other sources within sixty (60) days of the date of application in cases where disability is an issue, and within forty-five (45) days in all other cases.

(b) That defendants shall not classify a case as overdue *with* "good cause," but shall classify it as overdue *without* "good cause," unless it appears from the documents in the applicant's file at the county department of social services that

(i) the applicant was notified in writing within twenty (20) days of the date of application of *each specific piece of information* needed for processing the application; and

(ii) if the need for additional information subsequently arose, the applicant was notified in writing of the specific information needed within five (5) working days of the date on which the need for new and additional information became known to the county; and

(iii) in applications where disability is an issue, all necessary information was sent by the county office to that Disability Determination Section within twenty-five (25) days of the date of application, unless circumstances beyond the control of the county agency, documented in the case file at the agency, make it impossible for the county to comply.

Defendants, however, may reclassify a case covered by the terms of this subparagraph 3(b) as overdue *with* "good cause" after delay caused by the applicant has exceeded the delay caused by the defendants. For example, if defendants do not notify an applicant of all the information needed to process his or her application until *thirty* days after the application is filed (*i.e.*, ten days more than the twenty days allowed by this paragraph), the case shall be classified on the forty-fifth day as overdue *without* "good cause" even though the applicant has not supplied all necessary information. But if the information has still not been supplied as of the *fifty-fifth* day (*i.e.*, after ten more days), defendants may reclassify the application as overdue *with* "good cause."

4. That each month defendants shall classify all Medicaid applications which are "certified" but not yet "authorized" and are pending forty-five (45) days (or sixty (60) days when disability is an issue) as overdue with "good cause" or without "good cause." Defendants shall limit the concept of "good cause" for delay in processing these applications to cases in which the information necessary to "authorize" the application has not yet been provided to the department by the applicant.

5. That absent a documented change in circumstances, the defendants shall designate each overdue AFDC and Medicaid application, including those covered by ¶ 4 of this order, as overdue *without* "good cause" on the fifth working day after the documents in the applicant's file show that the department received the information necessary to determine eligibility which had previously delayed the case.

6. That defendants shall continue sending monthly reports to plaintiffs' counsel showing all AFDC and Medicaid applications (including reinstatements), which are pending more than forty-five (45) days (or sixty (60) days when disability is an issue) in each county. The statistics will reflect the classification of overdue *with* "good cause" and *without* "good cause" as defined in this order.

7. That defendants shall designate each overdue application pending at the Disability Determination Section as either overdue *with* "good cause" or overdue *without* "good cause" as of the sixtieth day after the date of application. Defendants shall limit the concept of "good cause" for delay in processing applications where disability is an issue to cases where the documents in the applicant's file at the Disability Determination Section show the following:

(a) All additional medical evidence known to be necessary to determine eligibility was requested within the first five (5) days of receipt of the application by the Disability Determination Section and this information has not yet been received; and

(b) The disability decision has been mailed to the county department of social services within seven (7) working days of the receipt by the Disability Determination Section of medical evidence necessary to determine eligibility.

The Medicaid unit's reliance upon the Social Security unit's disability determinations shall in no way excuse defendants from this definition of "good cause."

8. That the defendants shall submit to plaintiffs' counsel a monthly report of the total number of cases received by the Disability Determination Section each month, as well as the number of cases overdue with "good cause" and overdue without "good cause."

9. That defendants, their successors, and all employees and agents of the Department of Human Resources (DHR) hereby continue to be enjoined to process all AFDC and Medicaid applications within forty-five (45) days (or sixty (60) days when disability is an issue), unless they are classified as overdue with "good cause" according to the terms of this order.

10. That defendant shall undertake immediate corrective action in those counties which are in non-compliance with this order and with the court's previous orders. The defendants shall consider employing state personnel who can be temporarily assigned to county departments experiencing seasonal or other difficulties in processing applications. In addition, defendants shall consider imposing fiscal sanctions on county departments that are not in compliance with this court's orders.

11. That in view of defendants' protracted non-compliance with previous court orders, but principally to insure future compliance, defendants are ordered to pay each applicant who is determined to be eligible for AFDC or Medicaid a remedial fine of fifty dollars ($50.00) for each week or fraction thereof that his or her application was delayed beyond the relevant time limit without "good cause." Defendants will be given ninety (90) days from the date of this order to bring the county departments into compliance with federal law and the terms of this order. At the end of ninety (90) days, defendants are ordered to send each applicant who is sent an initial AFDC check or favorable Medicaid notice of decision a separate check in the amount required by the terms of this paragraph. A decision by defendants that an applicant is not entitled to payment provided for by this paragraph shall be subject to the statutory appeals procedure. See N.C.G.S. § 108A–79.

12. That any money paid to an applicant as a result of this order shall not be recoverable by defendants. Nor shall the money paid to a successful applicant be treated as income or reserve for the purpose of determining public assistance eligibility or benefit levels.

13. That until further order of court, plaintiffs' counsel are allowed access to the public assistance case files in all of any ten county departments of social services of their choice, to investigate the accuracy of the defendants' monthly statistical reports. Defendants are ordered to pay the plaintiffs' reasonable attorneys' fees for this investigation.

14. That defendants shall continue to comply with the earlier order of this court, as modified herein, that they prevent county departments of social services from denying or rejecting AFDC or Medicaid applications on the basis of an applicant's delay in obtaining and submitting information needed to establish eligibility. Such delay shall include, but not be limited to, an applicant's failure to be present for a home visit, or failure to bring in medical bills necessary for "certification" or "authorization."

However, defendants are not required to hold cases open more than six (6) months from the date of application unless there is "good cause" to do so. "Good cause" for holding a case open would exist when

(a) The applicant's efforts to obtain the missing information have been fruitless and he or she has made reasonable attempts within the initial six months to obtain the information. Reasonable shall mean at least two attempts by the applicant to obtain the information following notification that he or she is responsible for providing the information.

(b) Despite reasonable efforts by the applicant during the initial six months a collateral source has failed to provide necessary information. Reasonable shall mean two attempts by the applicant to make the source provide the information.

(c) The applicant has been unable to obtain the necessary information due to lengthy illness or deteriorating mental or physical condition.

(d) Any other reason determined reasonable by the local or state hearing officer.

Where "good cause" exists, defendants shall hold the case open for an additional six (6) months. Where defendants determine that "good cause" does not exist and deny an application at the end of the first six months, the applicant shall have the right to appeal the decision pursuant to N.C.G.S. § 108A–79.

15. That the defendants shall continue to insure that all counties take all public

assistance applications on the first day the person appears desiring to apply. Furthermore, defendants shall continue to insure that all persons who appear at a county department of social services desiring to apply for public assistance shall be informed in writing and verbally of their right to make application without delay. The text of the notice provided to would-be applicants shall be the same as that provided in the attachment to the August 12, 1976 order in this case.

16. That defendants shall send copies of all county letters, manual changes, official bulletins and county monitoring reports pertaining to the processing of AFDC and Medicaid applications to plaintiffs' counsel.

17. That the defendants shall submit reports to the court after ninety (90) days, and again after one hundred and eighty (180) days, detailing what steps have been taken to comply with this order, what results have been obtained, and what problems are continuing.