Julie **ROBIDOUX**, Kathleen **Rock**, and Margaret **Bevins**, individually and on behalf of all persons similarly situated

v.

Jane **KITCHEL**, Individually and in her capacity as Commissioner of the Vermont Department of Social Welfare, and Veronica **Celani**.

Civ. A. No. 5:91–CV–114.

United States District Court,
D. Vermont.

Feb. 13, 1995.

Thomas F. Garrett, Vermont Legal Aid, Inc., Burlington VT, for plaintiffs.

Wendy Morgan, Vermont Legal Aid, Inc., St. Johnsbury VT, for Kathleen Rock.

Michael Owen McShane, Vermont Atty. General's Office, Waterbury VT, for defendants.

## OPINION AND ORDER

BILLINGS, Senior District Judge.

This is a class action initiated pursuant to 42 U.S.C. § 1983 [1] on behalf of all persons who have, since the date of commencement of this action, applied for, or may in the future apply for, assistance from the Vermont Department of Social Welfare ("DSW") under either the Food Stamp or Aid to Families with Needy Children ("ANFC") programs.[2]

---

**1.** 42 U.S.C. § 1983 provides, in pertinent part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**2.** The class was certified in conformity with an opinion issued by the United States Court of Appeals for the Second Circuit. *Robidoux v. Celani*, 987 F.2d 931, 939 (2d Cir.1993).

Defendants are Jane Kitchel and Veronica Celani, the current and former Commissioners of the DSW, respectively. Plaintiffs assert that the DSW's failure to process applications for Food Stamps and/or ANFC benefits within the time specified by federal law violates the rights secured to them by federal law and the Due Process Clause of the Fourteenth Amendment.[3] Plaintiffs' class action seeks declaratory and injunctive relief for Defendants' violation of the deadlines for these eligibility determinations.[4]

On August 5, 1994, Defendants moved for summary judgment. On November 2, 1994, Plaintiffs filed their opposition to Defendants' Motion and cross-moved for summary judgment. On December 2, 1994, Defendants filed their response to Plaintiffs' cross-motion.

## Factual Background

ANFC[5] is a federally created public assistance program designed to help "needy dependent children and the parents or relatives with whom they are living." 42 U.S.C. § 601. The federal Food Stamp program was created to alleviate hunger and malnutri-

tion in low income households. 7 U.S.C. § 2011.

Federal law sets maximum time limits within which the Vermont DSW must act on ANFC and Food Stamp applications.[6] With respect to ANFC, an assistance check or a notification of denial must be mailed within a "reasonable" time prescribed by state regulations but no later than forty-five days from the date of application. 45 C.F.R. § 206.10(a)(3). Vermont has prescribed thirty days as a time limit. Vermont Welfare Assistance Manual § 2210. As for Food Stamps, state agencies must provide benefits or notification of denial within thirty days from the date of application for most applicants. 7 U.S.C. § 2020(e)(3);[7] 7 C.F.R. §§ 273.2(g)[8]. In Vermont, these programs are administered by the Commissioner of the DSW. 33 V.S.A. §§ 1101–1103.

In late 1990, during the national recession, the number of applications for public assistance in the State of Vermont rose significantly. For example, between May and November 1990, a DSW internal study determined that the number of requests for assis-

---

3. Specifically, Count I of Plaintiffs' Complaint contends: "DSW's failure to process applications for AFDC assistance in 30 days deprives the plaintiffs of rights secured to them by 42 U.S.C. § 602(a)(1), 45 C.F.R. § 205.10(a)(3), and the Due Process Clause of the Fourteenth Amendment." Count II states: "The defendant's failure to process applications for Food Stamp assistance in 5 days for applicants entitled to expedited service, and 30 days for those not entitled to this service, deprives the plaintiffs of rights secured to them by 7 U.S.C. § 2020(e)(3), 7 C.F.R. §§ 273.2(g) and 273.2(h), and the Due Process Clause of the Fourteenth Amendment to the United States Constitution."

4. Plaintiffs request: (1) a declaration that late decisions on applications for Food Stamps and ANFC benefits violate federal law; (2) an injunction requiring the defendant to (a) identify cases that are near the decision deadline and give them expedited attention, and (b) notify applicants when a decision on their case is delayed and provide the opportunity to take an expedited administrative appeal, and (3) injunctive relief enabling counsel for the class to monitor the Department's performance, together with retention of jurisdiction in the District Court for appropriate additional relief, should such prove necessary.

5. Under federal law, this program is known as Aid to Families with Dependent Children ("AFDC").

6. These deadlines do not apply where DSW cannot make a timely decision because of an applicant's delay in completing his or her application. Vermont Welfare Assistance Manual § 2210 (ANFC); 7 C.F.R. § 273.2(h) (Food Stamps).

7. 7 U.S.C. § 2020(e)(3) provides, in pertinent part:

the State agency shall ... promptly determine the eligibility of each applicant household ... so as to complete certification of and provide an allotment retroactive to the period of application to any eligible household not later than thirty days following its filing of an application....

8. 7 C.F.R. § 273.2(g) provides, in pertinent part: *Normal processing standard*—(1) *Thirty-day processing.* The State agency shall provide eligible households that complete the initial application process an opportunity to participate ... as soon as possible, but no later than 30 calendar days following the date the application was filed.... (2) *Denying the application.* Households that are found to be ineligible shall be sent a notice of denial as soon as possible but not later than 30 days following the date the application was filed.

tance made to its Vermont district offices rose from 3,671 to 5,071, an increase of 38%.[9] (*See* Ex. 5 to Pls.' Mot., "An Analysis of Burlington's Overdue Pending Rates," at 1). The increase in the number of overdue applications state-wide, however, rose disproportionately. Overdue ANFC applications rose from 6% in May to 14% in November. (*Id.* at 2).[10] Overdue Food Stamp applications increased from 10% in May to 15% in November. (*Id.* at 3). The bulk of these public assistance applications were apparently filed in October and November of 1990, at which time, the applications became "overwhelming" to the DSW. (*Id.* at 4).

Defendant Kitchel did not agree with the study's conclusion that the DSW was "overwhelmed" in its capacity to process applications and thus implemented no measures to "avert a repetition" of this experience. (*See* Ex. 6 to Pls.' Mot., Def. Jane Kitchel's Answers to Pls.' Interrogs. of Sept. 1, 1994, at 4). Nevertheless, DSW staff has indicated that the Department was "inundated" with applications during the time the study was done. (*See* Ex. 7 to Pls.' Mot., Dep. of Bea Smith, at 34). The Director of Burlington's DSW Office indicated that in February, 1991, she was receiving complaints from DSW workers about the size of their case loads. (*See* Ex. 8 to Pls.' Mot., Dep. of Judy Higgins, at 11). Shortly thereafter, the DSW switched its work force from category specific to generic workers. This appeared to alleviate some of the workers' overloading. (Higgins Dep. at 11; Smith Dep. at 17).

Notwithstanding the staffing change, however, delays in processing public assistance applications continued into 1994. From December, 1993 until March, 1994, an average of 10% of ANFC and 9% of Food Stamp applications were processed outside of the legal time limit. (*See* Ex. A to Defs.' Mot., "Days to Action Raw Data with Time Processing Calculations"). In May, 1994, roughly 8% of ANFC applications and 6.5% of Food Stamp applications were processed outside of the time limit. (*Id.*) Despite this

evidence, Defendant Kitchel is of the opinion that "[i]n Vermont, applications that have been delayed beyond the 30 day limit represent a small percentage of the total applications processed. In the Department's view, this small percentage represents a standard of compliance which is fully consistent with the intent of the statutes and regulations that govern the programs its [sic] administers." (*See* Ex. 6 to Pls.' Mot., Def. Jane Kitchel's Answers to Pls.' Interrogs. of Sept. 1, 1994, at 5).

### Discussion

### I. Standard of Review

Summary judgment is appropriate when the Court finds that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The initial burden of demonstrating that no genuine issue of material fact exists rests on the party seeking summary judgment. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The burden then shifts to the opposing party, who may not rest on its pleading but must present "significant probative evidence" demonstrating that a factual dispute exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The Court must view these materials and draw all inferences in the light most favorable to the nonmovant. *Id.* at 255, 106 S.Ct. at 2513–14.

In the instant case, the Court concludes that no issue exists as to any material fact. The sole issue of relevant fact in this case involves the number and percentage of cases that have been decided in an untimely fashion. The parties agree as to these statistics. Accordingly, summary judgment is appropriate. The Court will address the parties' motions for summary judgment seriatim.

---

9. These statistics reflect application intake rates for the ANFC, Food Stamp, and Medicaid Programs.

10. In Burlington, Vermont's largest city, the rise in overdue ANFC applications rose even more significantly, from 3% in May to 16% in November.

## II. Plaintiffs' Motion for Summary Judgment

■ In support of their Motion for Summary Judgment, Plaintiffs point to a line of federal case law requiring states to comply with federal regulations in processing Food Stamp and ANFC applications. In *Robertson v. Jackson,* for example, the United States District Court for the Eastern District of Virginia considered the Commonwealth of Virginia's failure to meet the thirty day Food Stamp application processing deadline. 766 F.Supp. 470, 476 (E.D.Va.1991), *aff'd,* 972 F.2d 529 (4th Cir.1992). The court stated:

> [t]he Court rejects [the Virginia Department of Social Service's] contention that [it] need only bring Virginia's Food Stamp Program into 'substantial compliance' with the federal timeliness requirements. The law requires *full* compliance absent what is hoped will be minimum human error. Lack of staff or funds is not legally excusable, and this Court will not consider these hurdles in formulating a decree that mandates full compliance with federal law.

*Id.* The Court crafted a remedy limiting Virginia to a 0% delay of processing applications, with an error margin of 3%, within seven months. *Id.* at 479.

The *Robertson* decision is consistent with the conclusion reached by a number of other federal courts. *See Alexander v. Hill,* 549 F.Supp. 1355, 1359 (W.D.N.C.1982) ("[t]he law requires that *all* [AFDC and Medicaid] applications—not merely a substantial percentage of them—be processed within the relevant time limits") (emphasis in original), *aff'd,* 707 F.2d 780 (4th Cir.), *cert. denied sub. nom Syria v. Alexander,* 464 U.S. 874, 104 S.Ct. 206, 78 L.Ed.2d 183 (1983); *Hess v. Hughes,* 500 F.Supp. 1054, 1063 (D.Md.1980) (enjoining Maryland Department of Human Resources from failing to issue Food Stamps to eligible applicants within the 30 day deadline); *Tyson v. Norton,* 390 F.Supp. 545, 569 (D.Conn.) ("[t]he regulation requires that *each* [Food Stamp] application shall be pro-

cessed within 30 days and to the extent that there are cases in which this is not being done, the defendants are acting in derogation of the regulatory mandate") (emphasis in original), *aff'd in part and vacated in part,* 523 F.2d 972 (2d Cir.1975).

In opposition, however, Defendants seek to distinguish the instant case from those cited above by noting that the certified class involved here includes all applicants for benefits, not just those who are found to be entitled.[11] The Defendants assert that if the Court looks solely to the assistance applications *granted,* only 3% of both ANFC and Food Stamp applications are granted out of time. (See Ex. A to Defs.' Mot., "Days to Action Raw Data with Time Processing Calculations, April 1991—June 1994"). Acceptance of this distinction, however, would require the Court to ignore the law.

■ The distinction urged by Defendants is inconsistent with the plain reading of the federal regulations governing the deadlines for processing ANFC and Food Stamp applications. These regulations, which provide a deadline that specifically includes grants *and* denials of benefits, define the federal right that is at issue here: the right to a timely decision, regardless of eligibility. *See* 45 C.F.R. § 206.10(a)(3); 7 C.F.R. § 273.2(g). Vermont's election to participate in these voluntary aid programs requires it to comply with federal statutes and regulations in its administration of the program. *See Smith v. Miller,* 665 F.2d 172, 175 (7th Cir.1981) (Medicaid).

■ Nor does the Court accept Defendants' statement that it considers Vermont to be at a "standard of compliance which is fully consistent with the intent of the statutes and regulations that govern the programs." As aforementioned, the law requires full compliance, absent a minimum of human error. *See Alexander,* 549 F.Supp. at 1359. But, even if the law required only substantial

---

11. Indeed, the certified classes in *Robertson, Hess* and *Tyson* consisted of only those individuals who were eligible to receive benefits. *See* 766 F.Supp. at 471; 500 F.Supp. at 1064; 390 F.Supp. 545. The *Robertson* class was later expanded to include *all* applicants for public assis-
tance. *See Robertson v. Jackson,* 972 F.2d 529, 529 (4th Cir.1992). In *Alexander,* although the court never defined the plaintiff class, the relief afforded extended to all applicants, regardless of eligibility. *See* 549 F.Supp. at 1359.

compliance, the Court must look to the nature of the interest at stake in determining what is "substantial." *See Fortin v. Commissioner of Mass. Dep't of Pub. Welfare,* 692 F.2d 790, 795 (1st Cir.1982). Here, the interest lies in the question of entitlement to subsistence-level benefits "making the consequences of failure to comply quite serious." *Id.* (citing *Mathews v. Eldridge,* 424 U.S. 319, 340–43, 96 S.Ct. 893, 905–07, 47 L.Ed.2d 18 (1976); *Goldberg v. Kelly,* 397 U.S. 254, 264, 90 S.Ct. 1011, 1018–19, 25 L.Ed.2d 287 (1970)). In establishing a processing deadline for all applications, the federal government recognized the interest of all applicants in a timely decision. Individuals deemed eligible for benefits need assistance quickly. Those who are found to be ineligible need to seek alternative resources, and potentially pursue an appeal, as soon as possible. In light of these interests, the federal government set a deadline, which participating states are legally bound to follow, for both grants *and denials* of applications for benefits.

Accordingly, the Court finds that the DSW is required to process *all* applications for benefits within the thirty day deadline specified by law. The statistics, as supplied by Defendants and detailed above, clearly indicate that Defendants are not meeting this target. As a matter of law, the Court, therefore, GRANTS summary judgment in favor of the Plaintiffs on the issue of Defendants' liability.

### III. Defendants' Motion for Summary Judgment

[5] In support of their Motion for Summary Judgment, Defendants make four arguments as to why the State should not be required to remedy the ANFC and Food Stamp application processing delay that currently exists. Initially, Defendants assert that the delays in the processing of Food Stamp and ANFC applications are, at worst, caused by case workers' negligence and thus cannot be remedied by § 1983. In support of this contention, Defendants cite *Parratt v. Taylor,* 451 U.S. 527, 543, 101 S.Ct. 1908, 1916–17, 68 L.Ed.2d 420 (1981) (rejecting § 1983 claim that prison's failure to deliver plaintiff's package was a violation of due process where the deprivation did not occur "as a result of some established state procedure")[12] and *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) ("Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property"). Even assuming that these cases involving tort claims made by prison inmates are applicable to the case at bar, however, the Court concludes that the consistent 8–10% failure rate in meeting the applicable ANFC and Food Stamp deadlines transcends mere negligence.[13] Defendant Kitchel clearly recognized that the problem existed, but took no action to "avert a repetition."[14]

As their second argument, Defendants assert that they cannot be held liable in their individual capacities under § 1983 because they had no part in the individual application processing delays, nor did they authorize or condone delays as a matter of state policy. Again, the statements made by Defendant Kitchel, as discussed above, cause the Court to reject this argument. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) ("to establish personal liability in a § 1983 action it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right"). Kitchel's failure to remedy the deprivation renders her liable in her personal capacity.

Defendant Kitchel further asserts that she has no liability in her official capacity because she cannot prevent human error. *See*

---

12. In *dicta,* the Court indicated that their decision might be different in situations where it is alleged that the procedures themselves are inadequate.

13. Although Defendants urge the Court to look only at delay statistics for those applications that were subsequently granted, the Court rejects this distinction for the reasons stated in its discussion of Plaintiff's summary judgment motion.

14. Although the Court recognizes that Defendants changed their work force from specific to generic workers, this alteration appeared to make no sizable difference in case processing delays.

*Graham*, 473 U.S. at 166, 105 S.Ct. at 3105 (official-capacity suit is appropriate where the entity's "policy or custom … played a part in the violation of federal law."); *but see Williams v. Smith*, 781 F.2d 319 (2d Cir. 1986) (supervisory official may be held liable where she failed to remedy the wrong, or the official could have created the policy under which the unconstitutional practices occurred or allowed the policy to continue, or the official could have been grossly negligent in managing subordinates). In light of *Williams*, and for the reasons stated above, the Court concludes that it is appropriate to hold Defendant Kitchel liable in her official, as well as her individual capacity.

■ As their third argument, Defendants assert that the federal right Plaintiffs allege, the right to a prompt decision, is not the type of revered civil right protected by § 1983. Rather, Defendants argue, "§ 1983 traditionally is invoked to provide a remedy for persons deprived of constitutional rights, such as life, liberty, and property." (Def.'s Mot. at 10). In making this argument, Defendants urge the Court to ignore the decision of the United States Supreme Court in *Maine v. Thiboutot*, and its progeny. 448 U.S. 1, 8, 100 S.Ct. 2502, 2506, 65 L.Ed.2d 555 (1980) (Congress' use of "and laws" in § 1983 does not refer solely to civil rights and equal protection laws). Indeed, *Thiboutot* deals with Maine's violation of the statutory requirements under the federal ANFC program.

■ Rather, the Court is convinced that Plaintiffs' action is properly brought under 42 U.S.C. § 1983. In *Wilder v. Virginia Hospital Ass'n*, the United States Supreme Court articulated a test for determining when statutes create a "federal right" enforceable under § 1983:

> Such an inquiry turns on whether 'the provision in question was intend[ed] to benefit the putative plaintiff.' If so, the provision creates an enforceable right unless it reflects merely a 'congressional preference' for a certain kind of conduct rather than a binding obligation on the governmental unit, … or unless the interest the plaintiff asserts is 'too vague and amorphous' such that it is 'beyond the competence of the judiciary to enforce.'

496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990) (citations omitted).[15] The regulations specifying the state's deadlines for determinations on ANFC and Food Stamp applications comport with the *Wilder* test. By specifying deadlines for both eligible and ineligible applicants, they reflect an intent to benefit the entire Plaintiff class.[16] Moreover, these deadline regulations create a binding obligation of compliance on the states, and do not merely express "congressional preference." *Id.* Also, these regulations are not beyond the competence of the judiciary to enforce. *See, e.g., Robertson*, 766 F.Supp. at 476; *Alexander*, 549 F.Supp. at 1359; *Hess*, 500 F.Supp. at 1063.

**15.** In addressing the issue of whether the Adoption Assistance and Child Welfare Act of 1980 could be enforced pursuant to § 1983, the United States Supreme Court, in *Suter v. Artist M.*, 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1, did not specifically apply the test developed just two terms before in *Wilder*. Nevertheless, the *Suter* Court cited *Wilder* favorably. Circuit courts that have sought to reconcile *Wilder* and *Suter* have concluded that the *Wilder* test remains viable. *See, e.g., Wood v. Tompkins*, 33 F.3d 600, 606 (6th Cir.1994); *Marshall v. Switzer*, 10 F.3d 925, 928 (2d Cir.1993); *Albiston v. Maine Comm'r of Human Services*, 7 F.3d 258, 263 (1st Cir.1993).

**16.** To determine whether a statutory provision creates rights enforceable under § 1983, the Court must look not only at the specific statutory provision at issue, but at the entire legislative framework as a whole. *Marshall*, 10 F.3d 925 at 928. (citing *Suter*, 503 U.S. at 357–58, 112 S.Ct. at 1367). The Court's analysis of the ANFC and Food Stamps benefits, when viewed as a whole, lead the Court to conclude that the statutes are designed to benefit the entire Plaintiff class. The statutory authorizations note that ANFC and Food Stamps statutes are designed to help children in need, 42 U.S.C. § 601, and the hungry, 7 U.S.C. § 2011, *i.e.*, those who are eligible. Nevertheless, the statutes also have specific provisions that protect the rights of all applicants, including those who are ultimately deemed ineligible. For example, applicants who are denied ANFC benefits or who find a decision on their application was not made in a timely manner have a right to a hearing. 45 C.F.R. § 205.10(a)(5). Similar rights are extended to applicants for Food Stamps. 7 C.F.R. § 273.10(g)(1)(ii). In light of these protections afforded to applicants who are subsequently denied benefits, we conclude that these individuals have rights that may be enforced under 42 U.S.C. § 1983.

 Finally, Defendants argue that Plaintiffs cannot allege a § 1983 cause of action for the state's violation of the 30 day time limit specified by Vermont for processing of ANFC applications. Defendants note that the federal regulations merely indicate that the state must process ANFC applications within "reasonable" state-established time standards, not in excess of 45 days. 45 C.F.R. § 206.10(a)(3). Defendants assert, therefore, that the state-selected thirty day time period is discretionary and does not create a federal right that is secured by § 1983. In support of this contention, Defendants cite *Suter*, 503 U.S. at 347, 112 S.Ct. 1360. The Court disagrees. *Suter* involved enforcement of the Adoption Assistance and Child Welfare Act of 1980 under § 1983. That act left a wide latitude of discretion in compliance for states, which merely needed to submit a plan meeting with sixteen guidelines in order to meet the statutory requirements. *Suter*, 503 U.S. at 361–62, 112 S.Ct. at 1369. The Court does not find that such a wide latitude of state discretion exists here. Moreover, the language of the regulation specifically incorporates the state set deadline within its parameters: check or notification of denial must be mailed within a reasonable time *prescribed by the state regulations*, but in no time greater than 45 days. 45 C.F.R. § 206.10(a)(3) (emphasis added). Thus, the federal regulation incorporates the state's time period. *See Robidoux v. Celani*, 987 F.2d 931 (2d Cir.1993) ("the Department must make decisions on both Food Stamp and ANFC applications within 30 days of the date of application"); *Fortin*, 692 F.2d at 800 (binding Massachusetts to honor the thirty day time limit for advising applicants of ANFC eligibility "because that is the only definite time standard it announced").

Thus, the Court finds none of the arguments advanced by the Defendants in favor of summary judgment to be persuasive. The Court, therefore, DENIES Defendants' Motion for Summary Judgment.

### IV. Remedy

Having addressed this Order to the issue of liability only, the Court will consider the appropriate remedy at a later date. A hearing will be held before the Court on Monday, April 10, 1995, at 10:00 a.m. to address the issues raised by both parties with respect to this issue. The parties are encouraged to submit briefs to the Court expressing opinions as to the manner in which the Court should craft an appropriate remedy.

### Conclusion

In light of the foregoing, the Court hereby:

1. GRANTS Plaintiffs' Motion for Summary Judgment as to the issue of liability only;

2. DENIES Defendants' Motion for Summary Judgment;

3. Sets a hearing on Monday, April 10, 1995, at 10:00 a.m. for further consideration of the issue of remedy. Plaintiffs are ordered to brief this issue by Monday, March 13, 1995. Defendants' response is due on Thursday, March 30, 1995.

SO ORDERED.