*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0389p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CARRIE HARKLESS; TAMECA MARDIS; ASSOCIATION
OF COMMUNITY ORGANIZATIONS FOR REFORM NOW,
                                      *Plaintiffs-Appellants,*

                    *v.*

JENNIFER BRUNNER, Secretary of State; HELEN E.
JONES-KELLEY, Director of the Department of Job
and Family Services,
                                      *Defendants-Appellees.*

Nos. 07-3829/4165

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 06-02284—Patricia A. Gaughan, District Judge.

Argued: June 12, 2008

Decided and Filed: October 28, 2008

Before: SILER and COLE, Circuit Judges; CLELAND, District Judge.[*]

---

## COUNSEL

**ARGUED:** Neil A. Steiner, DECHERT, New York, New York, for Appellants. Henry G. Appel, Michael D. Meuti, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees. **ON BRIEF:** Neil A. Steiner, Robert W. Topp, DECHERT, New York, New York, Lisa J. Danetz, Brenda Wright, DEMOS: A NETWORK FOR IDEAS & ACTION, Brighton, Massachusetts, Jon M. Greenbaum, LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW, Washington, D.C., for Appellants. Henry G. Appel, Michael D. Meuti, William P. Marshall, Richard N. Coglianese, Damian Sikora, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees. Dirk C. Phillips, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae.

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

_____

**OPINION**

_____

SILER, Circuit Judge.  Plaintiffs, Carrie Harkless, Tameca Mardis, and the Association of Community Organizations for Reform Now ("ACORN") (collectively, "plaintiffs"), appeal the dismissal of their suit brought pursuant to the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg-5.  The suit alleges that the defendants, Jennifer Brunner, Secretary of State for the State of Ohio ("the Secretary"), and Helen E. Jones-Kelley, Director of the Department of Job and Family Services ("DJFS") for the State of Ohio ("the Director"), failed to comply with Section 7 of the NVRA.  Because the complaint states a cause of action against the Secretary and the Director, we **REVERSE** and **REMAND** for proceedings consistent with this opinion.

## I. BACKGROUND

### A.  Facts

Because this is an appeal from the grant of a Rule 12(b)(6) motion to dismiss, "the following account accepts as true the facts alleged in the complaint."  *Jones v. City of Cincinnati*, 521 F.3d 555, 557 (6th Cir. 2008).  Harkless is an Ohio citizen living in Lorain.  She receives food stamps, Medicaid assistance, and cash assistance through Ohio Works First.  These benefits are administered by the DJFS for the State of Ohio.  Harkless is eligible to vote in Ohio, and she was previously registered to vote.  However, she "has moved since registering to vote and has not changed her voter registration address, and she has not been offered the opportunity to register to vote or change her voter registration address on any of her visits to the DJFS," as required by Section 7 of the NVRA.

Mardis is an Ohio citizen living in Cleveland.  She receives food stamps and Medicaid assistance through the DJFS.  She is eligible to vote in Ohio, but she is not registered to vote "and has not been offered the opportunity to register to vote on any of her visits to the DJFS," as required by Section 7 of the NVRA.

ACORN is a non-profit organization incorporated in Louisiana with several offices in Ohio. Its main Ohio office is in Cleveland, and it has more than 5,600 members in its six Ohio chapters. It spends "hundreds of thousands of dollars each year on voter registration activities in the state of Ohio."  ACORN regularly conducts voter registration drives to collect voter registration applications from people outside of DJFS offices who were not offered the opportunity to register to vote during visits to DJFS offices, as required by Section 7 of the NVRA.

There is widespread noncompliance with the NVRA's requirements.  The Secretary has limited her activities to the maintenance of a toll-free telephone number that county DJFS offices may call to receive more voter registration application forms.  The DJFS denied legal responsibility for ensuring that voter registration services are available at public assistance agencies.  The defendants have failed to monitor NVRA compliance by DJFS offices or enforce the mandates of Section 7 of the NVRA in such offices.  Spot checks performed during October and November of 2005 at DJFS offices in Lorain, Franklin, Delaware, Lake, Mahoning, and Cuyahoga counties revealed that there were no voter registration forms at any offices except in Mahoning County.  A 2005 survey conducted by ACORN revealed that only 3 out of 103 people exiting a DJFS office were offered a form asking whether they wanted to register to vote.  Between 2002 and 2004, DJFS offices for rural counties with relatively small populations registered far more voters than urban counties with larger populations and more people living at or below the poverty line.  In the same time period, DJFS offices in 10 counties failed to register a single voter, DJFS offices in 17 counties registered fewer than 10 voters, and DJFS offices in 32 counties registered fewer than 100 voters.

During 2003 and 2004, DJFS offices statewide processed about 4.7 million applications for food stamps and processed less than 1.5% of that number of voter registration application forms.

On February 23, 2006, the Greater Cleveland Voter Coalition sent a letter to the Secretary outlining Ohio's failure to comply with the NVRA and requesting that steps be taken to bring the state into compliance. On May 12, 2006, ACORN sent a letter to the Secretary to provide written notice of the violations as required by the NVRA. The letter stated that ACORN would bring suit unless Ohio devised a plan to implement the NVRA. The Director was sent a copy of the letter. On May 26, 2006, the Secretary's office responded to the Greater Cleveland Voter Coalition letter, asserting that NVRA compliance was not the Secretary's responsibility. ACORN received a copy of the letter. ACORN again wrote the Secretary in July 2006, offering to meet and address steps Ohio could take to ensure NVRA compliance. The Secretary did not respond, and in September 2006 the plaintiffs filed a complaint in the Northern District of Ohio alleging that the Secretary and the Director failed to fulfill their obligations under Section 7 of the NVRA.

## B.  The District Court's Opinions

The district court granted the defendants' motions to dismiss. *Harkless v. Blackwell*,[1] 467 F. Supp. 2d 754 (N.D. Ohio 2006). First, the court concluded that ACORN lacked standing to bring suit. *Id.* at 759. It ruled ACORN lacked standing to sue on its own behalf because the complaint failed to allege that ACORN's ability to further its goals had been "'perceptively impaired' so as to constitute far more than simply a setback to the organization's abstract social interests." *Id.* The court ruled that ACORN lacked associational standing because ACORN "failed to allege anything except 'a setback to its abstract social interests,'" and ACORN failed to "allege[] facts demonstrating that any of ACORN's members have suffered, or will suffer, a concrete, actual injury traceable to defendants' alleged violations of the NVRA." *Id.* at 761.

Second, the court ruled that the complaint should not be dismissed on grounds that Harkless and Mardis failed to comply with the NVRA's notice requirements. *Id.* at 761-62. Citing *ACORN v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997), it held that "the Sixth Circuit has determined that notice sent by ACORN of the same NVRA violation alleged by the individual plaintiffs satisfies the notice requirement." *Harkless*, 467 F. Supp. 2d at 761.

Third, the court concluded that the Secretary was not a proper party to the suit because "the fact that plaintiffs allege that counties are not complying with their duties under the law is insufficient to state a claim against the Secretary." *Id.* at 762. The court ruled that under the Ohio Revised Code and the Ohio Administrative Code the county DJFS offices bore the burden of providing voter registration forms, and "the county DJFS offices have a duty to implement procedures designed to comply with the NVRA." *Id.* at 763. The court found support for this conclusion in *United States v. Missouri*, No. 05-4391-CV-C-NKL, 2006 WL 1446356 (W.D. Mo. May 23, 2006). In *Missouri*, "[t]he court held that despite the fact that, pursuant to the NVRA, Missouri has designated the Secretary of State as the chief election official to coordinate NVRA responsibilities for Missouri, the Secretary of State was not responsible for the enforcement of the NVRA against local election authorities." *Harkless*, 467 F. Supp. 2d at 764. The court distinguished this case from *United States v. New York*, 255 F. Supp. 2d 73 (E.D.N.Y. 2003), which held "that two state public assistance agencies, which delegated their NVRA responsibilities to local agencies, were responsible for ensuring that their district offices complied with [the] NVRA." *Harkless*, 467 F. Supp. 2d at 765. The court found that "*New York* is distinguishable because that case made clear that New York law granted the State control over the local offices." *Id.*

---

[1]When the plaintiffs filed suit, J. Kenneth Blackwell was the Secretary of State and Barbara Riley was the Director of the Ohio DJFS. Brunner is the current Secretary and Jones-Kelley is the current Director. They have been substituted as defendants in this action.

Finally, the court concluded that the Director was not a proper party to the suit because "no NVRA section requires the director of a state's public assistance agency to ensure compliance by county departments," and "the Ohio statutes do not require the Ohio DJFS to ensure that the county departments comply with the NVRA." *Id.* at 769.

The court denied the plaintiffs' motion for reconsideration, but it did not address their request to file an amended complaint, apparently finding it moot in light of its decision that the defendants were not proper parties.

## II. STANDARD OF REVIEW

We review de novo the dismissal of a complaint for failure to state a cause of action. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)). "The court must construe the complaint in the light most favorable to plaintiffs, accept all well-pled factual allegations as true and determine whether plaintiffs undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *Id.* (citing *Kottmyer*, 436 F.3d at 688).

## III. ANALYSIS

The overarching question in this case is whether states should be held responsible for implementing the requirements of Section 7 of the NVRA. The two related secondary questions are (1) whether Ohio's Secretary of State, designated by Ohio's implementing legislation as the chief election official, has a role in ensuring Ohio's compliance with the NVRA, and (2) whether the Director of the DJFS has a role in ensuring Ohio's compliance with the NVRA. We first address the statutory framework and then address each defendant in turn.

### A. The NVRA and Ohio's Implementing Legislation

#### 1. The NVRA

Congress enacted the NVRA, 107 Stat. 77, 42 U.S.C. § 1973gg *et seq.*, to "increase the number of eligible citizens who register to vote in elections for Federal office," to "protect the integrity of the electoral process," and to "ensure that accurate and current voter registration rolls are maintained." *Id.* § 1973gg(b); *see also ACORN v. Miller*, 129 F.3d 833, 835 (6th Cir. 1997) (holding that Congress passed the NVRA "[i]n an attempt to reinforce the right of qualified citizens to vote by reducing the restrictive nature of voter registration requirements"). This case involves Section 7 of the NVRA, designed specifically to increase the registration of "the poor and persons with disabilities who do not have driver's licenses and will not come into contact with the other principal place to register under this Act [motor vehicle agencies]." H.R. REP. NO. 103-66, at 19 (1993) (Conf. Rep.), *as reprinted in* 1993 U.S.C.C.A.N. 140, 144.

The NVRA requires that "notwithstanding any other Federal or State law, . . . each State shall establish procedures to register to vote in elections for Federal office . . . by application in person . . . at a Federal, State, or nongovernmental office designated under [Section 7]." 42 U.S.C. § 1973gg-2(a)(3)(B). Section 7 requires that states designate as voter registration agencies ("VRAs") "all offices in the State that provide public assistance[] and all offices in the State that provide State-funded programs primarily engaged in providing services to persons with disabilities." *Id.* § 1973gg-5(a)(2)(A)-(B). In Ohio, the DJFS and all of its local offices have been designated as VRAs. *See* Ohio Rev. Code Ann. § 3501.01(X). VRAs are required to distribute voter registration applications, assist applicants in completing applications, and accept completed applications. 42 U.S.C. § 1973gg-5(a)(4)(A)(i)-(iii). Thus, in accordance with the NVRA, any time a person enters a DJFS office to receive food stamps, Medicaid assistance, welfare, or disability benefits assistance,

that person should receive a voter registration form for federal elections and assistance in filling out the form.

The NVRA also mandates that "[e]ach State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under [the NVRA]." *Id.* § 1973gg-8. As noted in the legislative history, this official is "responsible for implementing the state's functions under the bill." S. REP. NO. 103-6, at 39 (1993). In Ohio, that official is the Secretary.

The NVRA authorizes judicial intervention if a state fails to comply with its terms. *Miller*, 129 F.3d at 835 (citing 42 U.S.C. § 1973gg-9). "The Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out [the NVRA]." 42 U.S.C. § 1973gg-9(a). Also, "[a] person who is aggrieved by a violation of [the NVRA] . . . may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." *Id.* § 1973gg-9(b)(1)-(2).

## 2. Ohio's Implementing Legislation

To implement the NVRA, the Ohio General Assembly passed Amended Substitute Senate Bill 300, which incorporated the NVRA's mandates into Chapter 35 of the Ohio Revised Code. Ohio law requires each DJFS office to "designate one person within that agency to serve as coordinator for the voter registration program within the agency and its departments, divisions, and programs. The designated person . . . shall be responsible for administering all aspects of the voter registration program for that agency as prescribed by the secretary of state." Ohio Rev. Code Ann. § 3503.10(A). The DJFS offices are required to (1) provide "voter registration applications and assistance in the registration of persons qualified to register to vote," *id.* § 3503.10(B), (2) distribute a form in conjunction with the voter registration application that states, *inter alia*, that registering to vote or declining to register will not affect the amount of assistance provided, *id.* § 3503.10(C)(1)-(4), (3) distribute a voter registration form "to each applicant with each application for service or assistance," *id.* § 3503.10(D), and (4) train employees to administer the voter registration program and accept completed voter registration applications, *id.* § 3503.10(E)(1)-(4). "The [DJFS] county department[s] . . . shall make voter registration applications as prescribed by the secretary of state under [Ohio Rev. Code Ann. §] 3503.10 . . . available to persons" who are applying for or receiving public assistance. *Id.* § 329.051.

Ohio has designated the Secretary as its chief election officer. *Id.* § 3501.04. The Secretary must "[p]rescribe a general program for registering voters or updating voter registration information, such as name and residence changes, by . . . designated agencies," *id.* §3501.05(R), "[p]rescribe a program of distribution of voter registration forms through . . . designated agencies," *id.* § 3501.05(S), and "[a]dopt rules . . . for the purpose of implementing the program for registering voters through . . . designated agencies," *id.* § 3501.05(U). The Secretary must also "transmit written instructions on the implementation of the voter registration program within each designated agency," *id.* § 3503.10(F), and "prepare and cause to be displayed in a prominent location in each designated agency a notice that identifies the person designated to assist with voter registration, the nature of that person's duties, and where and when that person is available for assisting in the registration of voters," *id.* § 3503.10(I). Significantly, Ohio law empowers the Secretary to "[c]ompel the observance by election officers[2] in the several counties of the requirements of the election laws," *id.* § 3501.05(M), and to "investigate the administration of election laws, frauds, and

---

[2]Ohio law defines "election officer" as any of the following: (1) the Secretary, (2) employees of the Secretary serving the division of elections, (3) the director of a board of elections, (4) the deputy director of a board of elections, (5) a member of a board of elections, (6) employees of a board of elections, (7) precinct polling place judges, and (8) employees appointed by the boards of elections on a temporary or part-time basis. *Id.* at § 3501.01(U).

irregularities in elections in any county, and report violations of election laws to the attorney general or prosecuting attorney, or both, for prosecution," *id.* at § 3501.05(N)(1).

## B.  Are the Defendants Proper Parties?

### 1.  The Secretary

To determine whether the Secretary may be held responsible for Ohio's NVRA violations, we need not look further than the text of the statute.  The NVRA requires that each state "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under [the NVRA]."  42 U.S.C. § 1973gg-8.  As noted in the legislative history, this designated official is "responsible for implementing the state's function under the bill." S. REP. NO. 103-6, at 39 (1993). *See also Nat'l Coal. for Students with Disabilities Educ. & Legal Defense Fund v. Taft*, No. C2-00-1300, 2001 WL 1681115, at \*3 (S.D. Ohio Sept. 24, 2001) ("Ohio's Secretary of State and not its Governor has the duty and authority to implement and enforce the provisions of the NVRA."); Voluntary Guidance on Implementation of Statewide Voter Registration Lists, Election Assistance Comm'n, 70 Fed. Reg. 44593-02, at II(G) (Aug. 3, 2005) ("The chief State election official is the highest ranking State official who has, as a primary duty, the responsibility to ensure the lawful administration of voter registration in Federal elections.").

Despite this clear language, the Secretary–citing 42 U.S.C. § 1973gg-8–contends that the only task that Congress imposed upon her is the "coordination of State responsibilities under th[e] Act."  According to her, beyond this duty to "coordinate," Congress assigned no specific tasks to the Secretary, instead choosing to allow states to determine how to allocate responsibility for the NVRA's mandates.  And, because Ohio chose to implement its requirements through the county departments and to make local officials responsible, those local officials, not the Secretary, are the proper parties to this lawsuit.

Under the plain language of the statute, the designated officer, here the Secretary, must coordinate state responsibilities.  "Coordination," according to the Oxford English Dictionary, is "[t]he action of co-ordinating; the condition or state of being co-ordinated or co-ordinate."  Oxford English Dictionary (2d ed. 1989).  It is also defined as the "[h]armonious combination of agents or functions towards the production of a result." *Id.*  The Secretary's focus on the word "coordination" in isolation ignores the phrase it modifies, which is "state responsibilities"—namely, that "[e]ach State shall designate a State officer or employee" who is "to be responsible for coordination of State responsibilities."  42 U.S.C. § 1973gg-8.  Those responsibilities include the requirement that each state "designate as voter registration agencies . . . all offices in the State that provide public assistance." *Id.* § 1973gg-5(a)(2)(A).  The Act goes on to state, in no uncertain terms, that each VRA "shall" distribute voter registration forms, assist applicants in completing voter registration forms, and accept completed forms. *Id.* § 1973gg-5(a)(4)(A).

The Secretary argues that once the state designates an office as a VRA, her responsibility ends, and it is up to the designated office to carry out the remaining tasks.  According to this view, if every state passed legislation delegating NVRA responsibilities to local authorities, the fifty states would be completely insulated from any enforcement burdens, even if NVRA violations occurred throughout the state.[3]

However, the entire Act, including other subsections, speaks in terms of state responsibilities; what is noticeably missing is any mention of county, municipal, or other local authorities.  Indeed, Congress grafted the NVRA onto the existing public assistance structure, under

---

[3]If named as parties to this lawsuit, local authorities might claim that the state officials are the parties responsible for implementation and enforcement of NVRA obligations.

which the fifty states, not their political subdivisions, have the ultimate accountability. Accordingly, the better interpretation of the statute reads these two provisions together—that each state shall designate voter registration agencies, and that each state shall ensure that the agencies complete the required tasks. And the Secretary, as Ohio's chief election officer, is responsible for "harmonious combination"—or implementation and enforcement—of that program on behalf of Ohio.[4]

Two other provisions of the NVRA confirm this reading of the statute. First, private citizens aggrieved by a violation of the NVRA may bring a lawsuit for declaratory or injunctive relief with respect to the violation. *Id.* § 1973gg-9(b)(1)-(2). But before doing so, that person must "provide written notice of the violation to the chief election official of the State involved." *Id.* Only "[i]f the violation is not corrected within 90 days after receipt of a notice," is a private citizen then authorized to bring suit. *Id.* Second, Section 7 also provides that "[a]ll departments, agencies, and other entities of the executive branch of the Federal Government shall, to the greatest extent practicable, cooperate with the States in carrying out [the Act]." *Id.* § 1973gg-5(b). These provisions would be pointless if states could abdicate their responsibilities by delegating them to local officials. Requiring would-be plaintiffs to send notice to their chief election official about ongoing NVRA violations would hardly make sense if that official did not have the authority to remedy NVRA violations. Similarly, federal cooperation with state authorities would be meaningless if states had no role in the implementation or enforcement of NVRA requirements.

Furthermore, the courts that have been faced with similar issues support this reading of the NVRA. In *United States v. New York*, 255 F. Supp. 2d 73, 78 (E.D.N.Y. 2003), the district court considered whether two state agencies were required to ensure NVRA compliance by district offices run by local governments. The court concluded that "[i]t would be plainly unreasonable to permit a mandatorily designated State agency to shed its NVRA responsibilities because it has chosen to delegate the rendering of its services to local municipal agencies." *Id.* at 79. Similarly, the Fourth Circuit in *Robertson v. Jackson*, 972 F.2d 529, 533-35 (4th Cir. 1992), discussed, in the context of the Food Stamp Act, whether state agencies may avoid their federal responsibilities through delegation. The court concluded that "[a] state that chooses to operate its program through local . . . agencies cannot thereby diminish the obligation to which the state, as a state, has committed itself, namely, compliance with federal requirements." *Id.* at 534; *see also Woods v. United States*, 724 F.2d 1444, 1447 (9th Cir. 1984) ("While the state may choose to delegate some administrative responsibilities, the ultimate responsibility for operation of the [food stamp program] remain[s] with the state.").

The only case to the contrary, *United States v. Missouri*, No. 05-4391-CV-C-NKL, 2006 WL 1446356 (W.D. Mo. May 23, 2006), was reversed in *United States v. Missouri*, 535 F.3d 844, 852 (8th Cir. 2008). The district court held that the Missouri Secretary of State was not a proper defendant in an action under Section 8 of the NVRA (concerning maintenance of voter registration lists), because state law vested authority for voter registration lists in the state's 116 local election officials. *Missouri*, 2006 WL 1446356, at *8.

In *Missouri*, the district court explicitly relied on the fact that Missouri law did not give the Secretary of State enforcement authority. *Id.* at *6-7. On appeal, the Eighth Circuit found that "[u]nder the NVRA's plain language, Missouri may not delegate [its] responsibility . . . to a local official and thereby avoid responsibility. *Missouri*, 535 F.3d at 850. Ohio's statutes implementing the NVRA, in contrast, bestow upon the Secretary an obligation to enforce statewide compliance with

---

[4] The Secretary also contends that Congress would have used the word "enforcement" had it meant to give the chief election officer enforcement power. "Enforcement" makes sense when an official is to ensure compliance from a third party, whether it be private citizens or political subdivisions. But because Congress intended the states themselves, and not some third party, to have the responsibility for implementing the statute, "coordination" is the more appropriate term.

the NVRA. Under Ohio Rev. Code Ann. § 3501.05(N)(1), the Secretary of State "shall . . . investigate the administration of election laws, frauds, and irregularities in elections in any county, and report violations of election laws to the attorney general or prosecuting attorney, or both, for prosecution." In performing these duties, the Secretary "may administer oaths, issue subpoenas, summon witnesses, compel the production of books, papers, records, and other evidence, and fix the time and place for hearing any matters relating to the administration and enforcement of the election laws." *Id.* § 3501.05(CC). Accordingly, even if the word "coordination" in the NVRA is truly vague, Ohio law makes it abundantly clear that the Secretary is responsible for the implementation and enforcement of Section 7. Ohio law also makes clear that she has the authority to do so.

The plain-statement rule,[5] upon which the Secretary so heavily relies, does not help her. First, as we have explained, the NVRA and Ohio's implementing statute are clear: the Secretary is responsible for managing the multiple state responsibilities under the NVRA. Second, the plain-statement rule does not apply to the NVRA. The Secretary is correct that when Congress attempts to abrogate a state's sovereign immunity under Section 5 of the Fourteenth Amendment, it must make its intent to do so clear and unequivocal. *See, e.g.*, *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Congress enacted the NVRA, however, under Article I, Section 4 of the Constitution, more commonly known as the Elections Clause.[6] *ACORN v. Miller*, 129 F.3d 833, 836 (6th Cir. 1997).

In *Miller*, we explained that the Elections Clause "explicitly grants Congress the authority either to 'make' laws regarding federal elections . . . , or to 'alter' the laws initially promulgated by the states. Thus, unlike the Commerce Clause . . . , Article I section 4 specifically grants Congress the authority to force states to alter their regulations regarding federal elections." *Id.* Indeed, as the text of the Constitution makes clear, the Clause expressly presses states into the service of the federal government by specifying that state legislatures "shall" prescribe the details necessary to hold congressional elections. This stands in stark contrast to virtually all other provisions of the Constitution, which merely tell the states "not what they must do but what they can or cannot do." *ACORN v. Edgar*, 56 F.3d 791, 794 (7th Cir. 1995). When it comes to time, place, and manner regulations for federal elections, the Constitution primarily treats states as election administrators rather than sovereign entities. *See id.* at 796 ("[I]n this case Illinois advances the . . . notion that to make a state administer federal elections fatally compromises state sovereignty. That particular 'fatal compromise,' however, is built into the Constitution, precisely in Article I section 4, the first sentence of which places the burden of administering federal elections on the states.").

The Elections Clause also gives a broad grant of power to Congress, allowing it to define the boundaries of state transgressions and to remedy any wrongdoing. The Commerce Clause (read in conjunction with the Necessary and Proper Clause), for example, only permits Congress to "make all Laws which shall be necessary and proper" to "regulate Commerce . . . among the several States"; by contrast, the Elections Clause allows Congress to "make or alter" laws affecting the states. *See Miller*, 129 F.3d at 836; *Edgar*, 56 F.3d at 794-96. In ratifying Article I, Section 4, the states not only gave Congress plenary authority over federal elections but also explicitly ensured that all conflicts

---

[5] "Because states retain their sovereignty under the Tenth Amendment, Congress in enacting legislation affecting the balance in our federal system between the national and state governments must by plain statement make clear that it has duly deliberated the issue and fully intended to reach that result." *In re Brentwood Outpatient, Ltd.*, 43 F.3d 256, 264 (6th Cir. 1994).

[6] "The Times, Places and Manner of holding Elections . . . shall be prescribed in each State . . .; but the Congress may at any time by Law make or alter such Regulations. . . ." U.S. CONST. art. I, § 4, cl. 1.

with similar state laws would be resolved wholly in favor of the national government.[7] Accordingly, the logic behind the plain-statement rule—that Congress must be explicit when it encroaches in areas traditionally within a state's core governmental functions—does not apply when Congress acts under the Elections Clause, as it did in enacting the NVRA. *See Miller*, 129 F.3d at 836 (rejecting Michigan's argument that the NVRA "is unconstitutional because it . . . imping[es] upon basic principles of federalism and violat[es] the Tenth Amendment"); *Edgar*, 56 F.3d at 794-96.

Accordingly, the Secretary is a proper party to this suit.

### 2. The Director

The Ohio DJFS is a state agency established by statute and "administered by the director of job and family services." Ohio Rev. Code Ann. § 121.02(H). The Director is appointed by the governor with the consent of the Ohio senate and serves at the pleasure of the governor. *Id.* § 121.03(E). The county DJFS offices are separate from the state DJFS; they consist of a county director appointed by the board of county commissioners and other staff and employees. *Id.* § 329.01. Accordingly, each county DJFS serves as a VRA pursuant to Section 7 of the NVRA. *See id.* § 329.051 ("The county [DJFS] shall make voter registration applications . . . available to persons who are applying for [or receiving public assistance].").

Despite this distinction between the state and county DJFS offices, federal and Ohio law provide the statewide DJFS (and thus the Director) with the authority to direct county offices to comply with the NVRA. First, Section 7 of the NVRA requires that "[e]ach State shall designate as voter registration agencies . . . all offices in the State that provide public assistance." 42 U.S.C. § 1973gg-5(a)(2)(A). And, as discussed, the DJFS and all of its local offices have been designated as VRAs. Ohio Rev. Code Ann. § 3501.01(X). Thus, both the statewide and the local DJFS offices qualify as VRAs, and both are subject to the requirements placed on those agencies by Section 7—namely, the distribution of voter registration applications, assistance in completing applications, and the acceptance of completed applications.

Moreover, the Director, as the head of the "single state agency" in Ohio responsible for administering public assistance programs, has the responsibility to provide statewide voter registration services. Under Ohio Rev. Code Ann. § 5101.24, the statewide DJFS is empowered to take action against a county office that fails to comply with federal law, including Section 7 of the NVRA:

> Regardless of whether a family services duty is performed by a county family services agency . . . the department of job and family services may take action under division (C) of this section against the responsible county grantee if the department determines any of the following are the case: . . . (3) A requirement for the family services duty established by the department or any of the following is not complied with: *a federal or state law* . . . .

*Id.* § 5101.24(B) (emphasis added). In turn, Subsection (C), referenced in § 5101.24(B), enumerates the actions the state DJFS may undertake. Pursuant to that section, the Director may, *inter alia*: (1) "[r]equire the responsible county grantee to comply with a corrective action plan pursuant to a

---

[7] During the ratification debates, James Madison delivered the only speech in defense of the Elections Clause, in which he defended the necessity of the Clause's sweeping language: "The necessity of a Genl. Govt. supposes that the State Legislatures will sometimes fail or refuse to consult the common interest at the expense of their local conveniency or prejudices. . . . These were words of great latitude. It was impossible to foresee all the abuses that might be made of the discretionary power." 2 THE RECORDS OF THE FEDERAL CONVENTION OF 1787, at 240 (Max Farrand ed.) (1966).

time schedule specified by the department"; (2) "[i]mpose an administrative sanction"; (3) "[p]erform, or contract with a government or private entity for the entity to perform, the family services duty until the department is satisfied that the responsible county grantee ensures that the duty will be performed satisfactorily"; or (4) "[r]equest that the attorney general bring mandamus proceedings to compel the responsible county grantee to take or cease the action." *Id.* § 5101.24(C).

The Director's attempt to distinguish these provisions fails. First, she contends that § 5101.24(B), which specifies "responsible county grantees," should apply only to those programs that are included in the grants to the counties. And because the NVRA is not a "grant," this enforcement provision does not apply to it. This is a strained reading of the statute. "County grantee" includes "[a] board of county commissioners," *id.* § 5101.21(A)(1)(a), which oversees each local DJFS office and appoints the director of each county department, *id.* § 329.01. Ohio law authorizes the Director to take action against a county grantee if "[a] requirement for the family services duty established by the department *or any of the following is not complied with*: *a federal or state law*, state plan for receipt of federal financial participation, grant agreement between the department and a federal agency, or executive order issued by the governor." *Id.* § 5101.24(B)(3) (emphasis added). It does not require the federal law to be a grant, nor does it require the state to enter into a written agreement with the county before enforcing the NVRA. If a county department receiving food stamp grants does not provide voter registration services to food stamp applicants—as expressly required by the NVRA as well as by Ohio Rev. Code Ann. § 5101.54(F)—the plain language of the aforementioned enforcement provisions authorizes the Director to take a variety of corrective actions to compel county compliance. Furthermore, the county offices do in fact receive federal funding to distribute food stamps, Medicaid, welfare, and other federal aid. Thus, Ohio law authorizes the Director to take corrective action against the local-run DJFS offices if the offices are not in compliance with a family services duty, in violation of federal law.

Next, the Director contends that even if § 5101.24(B) applies, another subsection of that same statute, § 3503.10(L), precludes the Director from exercising authority under any of these provisions. Section 3503.10(L) states: "The [DJFS] . . . shall limit administration of the aspects of the voter registration program for the department to the requirements prescribed by the secretary of state and the requirements of this section and the [NVRA]." *Id.* "[R]equirements of this section" refers to the statute designating the various NVRA obligations, including the distribution of voter registration applications, the training of employees to administer the program, and the acceptance of applications. *Id.* § 3503.10.

Contrary to what the district court found, this subsection does not eliminate the Director's power to enforce compliance with the NVRA, but in fact supports it. The plain language of § 3503.10(L) acknowledges the Director's responsibility for ensuring adequate administration of the NVRA at the county levels; it simply prevents her from imposing additional voter registration requirements on DJFS offices *beyond* the requirements imposed by the Secretary, the Ohio implementing statutes enacted by the legislature, or the NVRA itself. The fact that the Director may not go beyond the requirements of the NVRA does not absolve her of the responsibility for meeting the NVRA's requirements. In other words, the Director may not require local DJFS offices to distribute voter registration forms at the local gas station, for example, because to do so would go beyond the requirements of Ohio's implementing statute. *See id.* § 3503.10(D) (only requiring local offices to distribute a voter registration form with each application for public assistance). But just because the Director may not go beyond Ohio's requirements does not mean she cannot hold local offices accountable for "the requirements of [Ohio's implementing statute]." *Id.* § 3503.10(L).

Because Ohio law authorizes the statewide DJFS (and thus the Director) to ensure compliance with Section 7 of the NVRA, the Director relies on the following curious proposition: because local authorities have the independent responsibility to comply with the NVRA, the Director should not be held accountable. True, the Ohio General Assembly has tasked the county offices with

implementing the NVRA; but, as previously explained, the General Assembly also tasked the Director with the power to enforce any county transgressions of federal law. This is not an either-or proposition. The fact that some states, like Ohio, delegate the administration of public assistance programs to counties or municipalities should not mean that those states are free of all statutory obligations. *See New York*, 255 F. Supp. 2d at 79 ("It would be plainly unreasonable to permit a mandatorily designated State agency to shed its NVRA responsibilities because it has chosen to delegate the rendering of its services to local municipal agencies."); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 286 (2d Cir. 2003) (holding that New York could not avoid its obligations under the Rehabilitation Act by delegating authority to localities to deliver federally funded services).

The federal food stamp program is instructive. Under that program, a designated state agency must submit and comply with a plan of operation. 7 U.S.C. § 2020(d)-(e). Ohio participates in the food stamp program, with the DJFS serving as its designated state agency. Ohio Rev. Code Ann. § 5101.54(A). For purposes of the food stamp program, the term "state agency" is defined as:

> [T]he agency of State government, including the local offices thereof, which has the responsibility for the administration of the federally aided public assistance programs within such State, and in those States where such assistance programs are operated on a decentralized basis, the term shall include the counterpart local agencies administering such programs.

7 U.S.C. § 2012(n)(1). In Ohio, then, both the county and state DJFS offices have the collective responsibility for complying with the food stamp program. Under the Director's view of state responsibilities, because the local and statewide DJFS are jointly responsible, the local offices have an independent duty to ensure compliance.

The Fourth Circuit has explicitly rejected this logic. In *Robertson*, 972 F.2d at 533, the court discussed, in the context of the Food Stamp Act, whether state agencies may avoid their federal responsibilities through delegation. Applicants of the program sued the Commissioner of the Virginia Department of Social Services after local administrative agencies failed to meet Food Stamp Act application processing deadlines. *Id.* at 530. Although the Commissioner did not have the authority under state law to supervise the local agencies, the Fourth Circuit rejected the Commissioner's defense: "A state that chooses to operate its program through local . . . agencies cannot thereby diminish the obligation to which the state, as a state, has committed itself, namely, compliance with federal requirements." *Id.* at 534. The court concluded that "the fact that the Commissioner may be unable to bring the entire Virginia system into full compliance, such that impossibility may well be a defense to contempt, does not, of itself, preclude issuance of an injunction mandating that the Commissioner try vigorously to compel compliance with federal statutes and regulations governing the food stamp program." *Id.* at 535; *see also Woods*, 724 F.2d at 1447 ("While the state may choose to delegate some administrative responsibilities [under the Food Stamp Act], 'the ultimate responsibility for operation of the plan remain[s] with the state.'") (quoting *California v. Block*, 663 F.2d 855, 858 (9th Cir. 1981)) (internal citations omitted); *Reynolds v. Giuliani*, 118 F. Supp. 2d 352, 386 (S.D.N.Y. 2000) ("[I]mplicit in the State's obligations to administer the Food Stamp Act, Medicaid Act, and cash assistance programs is a duty to oversee the City defendants' administration of the programs to ensure compliance with federal law.").

The Director's attempt to distinguish the Food Stamp Act fails. The Director claims that, unlike the NVRA, the Food Stamp Act holds the Commissioner fully responsible for ensuring compliance. Under the Food Stamp Act, the Director of the DJFS signs a "Federal/State Agreement" on behalf of the governor, which is the "legal agreement between the State and the [USDA]," 7 C.F.R. § 272.2(a)(2), in which the state undertakes to "[a]dminister the program in accordance with the provisions contained in the Food Stamp Act of 1977, as amended, and in the manner prescribed by regulations issued pursuant to the Act." *Id.* § 272.2(b). However, the same could be said for the

NVRA. Federal regulations mandate that the "single state agency" for various federal public assistance programs "must distribute voter information and registration materials as specified in the NVRA." 45 C.F.R. § 205.50(a)(4)(iv). In Ohio, that "single state agency" is the DJFS. Ohio Rev. Code Ann. § 5101.80(B) ("The [DJFS] shall act as the single state agency to administer and supervise the administration of Title IV-A programs."). And as already discussed, Ohio law also makes the statewide DJFS, and thus the Director, responsible for supervising the distribution of voter registration materials by local DJFS offices.

Accordingly, the Director is a proper party to this suit.

## C. Remaining Issues

Two issues remain. First, the district court found that ACORN did not have standing to bring this lawsuit, either on its own behalf or on behalf of its members. *Harkless*, 467 F. Supp. 2d at 759-61. Second, the district court denied the plaintiffs' motion to amend their complaint. We address only the district court's denial of the motion to amend. According to the plaintiffs, the proposed amended complaint cured the purported shortcomings in the initial complaint by (1) explicitly alleging that plaintiffs were injured by the Secretary's failure to comply with the obligations that she admitted were prescribed by the NVRA itself; (2) adding factual allegations about the Director's practices concerning supervisory activities over the local DJFS offices concerning NVRA duties; and (3) explicitly alleging that ACORN would not have expended funds on voter registration activities outside DJFS offices but for defendants' NVRA violations (which demonstrates an injury in fact and gives rise to individual standing in its own right), and that ACORN has members who have been injured by defendants' NVRA violations (which gives rise to associational standing). *See Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 573-74 (6th Cir. 2004). The district court declined to incorporate these amended allegations, presumably because it had already found that the defendants were not proper parties to the suit. However, because the district court erred in that regard, it should have permitted the plaintiffs' motion to amend, which has the effect of curing any purported deficiency in ACORN's argument in favor of standing.

## IV. CONCLUSION

Because the defendants are proper parties to this lawsuit, we **REVERSE** and **REMAND** to the district court for proceedings consistent with this opinion.